GRAFF, WASHBOURNE & DUNN v. WEBSTER et al.

(Circuit Court of Appeals, Second Circuit.  March 11, 1912.)

No. 187.

1. PATENTS (§ 28*)—INVENTION—DESIGN.
    That each separate element in a patented design was old does not negative invention, which may reside in the manner in which they are assembled, since it is the design as a whole, and the impression it makes on the eye, which must be considered.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 33; Dec. Dig. § 28.*]

2. PATENTS (§ 252*)—INFRINGEMENT—DESIGNS.
    It is not necessary, to constitute an infringement of a design patent, that the infringing design should be a Chinese copy; but it is sufficient if the similarity is such as would deceive an ordinary observer, giving such attention as a purchaser usually gives.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 394, 396; Dec. Dig. § 252.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—DESIGN FOR SILVER PLATE.
    The Graff design patents, No. 39,992, for a design for a dish, and No. 40,009, for a detail of a border section of a dish, preferably made of silver, held valid and infringed.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

Suit in equity by Graff, Washbourne & Dunn against Frederick H. Webster and Hawley J. Webster. Decree for complainants, and defendants appeal. Affirmed.

The decree of the Circuit Court held valid and infringed two design patents, granted to Charles Graff on May 18 and May 25, 1909, respectively, for a design for a dish and for a border section of a dish, preferably made of silver. The opinion below is reported in 189 Fed. 902, where the designs are reproduced.

Nicholas M. Goodlett, Jr., for appellants.
M. B. Philipp and Cleon J. Sawyer, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge.  The applications for the two patents in controversy were filed on the same day, March 15, 1909.  The patent for dish is dated May 18, 1909, and the patent for the border is dated May 25, 1909—seven days thereafter.  The design for the dish is represented by the diagram attached to the patent.  The drawing gives an inadequate and imperfect idea of the design when applied to a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

silver dish, but is, perhaps, as satisfactory a reproduction as can be expected when it is remembered that it is confined to a drawing in black on white paper, where no allowance can be made for lights and shades produced by the openwork and raised portions.

"The essential feature of the design is the flower leaf and scroll border A with the interior flat flower and leaf forms B formed by or resembling chasing or engraving."

In the patent for the "border-sections" the essential features are:

"The body A with edge scroll and leaf forms B, the festoonlike leaf form C, and the central figure D with flower form E."

The drawing of the patent is evidently intended to represent an enlarged section of the border of the dish shown in the prior patent, where the drawing is on so small a scale as to leave some doubt as to one of its minor details. It is said that the open work, or slot piercing, in the border shown in the silver exhibits in evidence, is not shown in the drawing of the dish. However this may be, there can be no doubt that piercings plainly appear in the second patent where the silver portions are shaded and clearly described by reference letters. There can be no question that the white portions of the body A represent openings, precisely as the white portions between the pickets of a fence drawn in black on white paper represent the openings between the pickets. No one of ordinary intelligence would suppose that such a drawing represented a tight board fence.

[1] The defendants have introduced a large number of exhibits showing designs for plates and other dishes having flower borders, leaf borders, scroll borders, and flower and leaf forms resembling chasing and engraving. They have not, however, produced any exhibit which shows these different elements assembled as in the Graff designs. It will simplify the discussion if it be at once admitted that each element of the patented designs, considered separately, was old and that sometimes two or more of them appear combined in the prior art. This does not invalidate the patents, unless it appears that they were so assembled as to form the designs of the patents. Indeed, it is manifest that a skillful designer, with the Graff dish before him, could construct a new and ornate design containing every element of that dish and at the same time presenting a totally different impression to the eye of the ordinary beholder. It is the design as a whole and not the segregated scrolls, leaves, flowers and forms which are united to produce the general effect, which must be considered. The situation in this respect is analogous to machines made up of a combination of old elements.

The machine produces a new result, the design a new impression upon the eye. To refuse patentability to a design because the separate elements are old, would be tantamount to denying originality to "The Lion of Lucerne" because other sculptors before Thorwaldsen had carved lions from stone. It would relegate "The Angelus" to obscurity because other artists before Millet had painted peasants at work in the harvest field.

[2] The defendants do not contend that the prior art renders the patents "totally invalid," but they contend that in view of that art,

the designs show only a slight variation of old compositions or arrangements and the claims must be construed to cover "the *specific elements* there employed and their *specific arrangement.*" In other words, it is their contention that only a Chinese copy will infringe. We cannot agree with this contention. It is true that a number of dishes made of china, silver and plated ware are produced, together with drawings and engravings of other dishes, each bearing certain features in common with the designs of the patents, but possessing such marked dissimilarities that even an ignorant or non-observant purchaser could not mistake the one for the other. There is no reason, therefore, for limiting the patented designs to the identical structures shown and described. If the ordinary observer would purchase the defendants' dishes, believing them to be those of the complainant, it is enough.

This is the rule laid down in Gorham Co. v. White, 14 Wall. 511, at page 528, 20 L. Ed. 731. The court says:

"The purpose of the law must be effected if possible; but, plainly, it cannot be if, while the general appearance of the design is preserved, minor differences of detail in the manner in which the appearance is produced, observable by experts, but not noticed by ordinary observers, by those who buy and use, are sufficient to relieve an imitating design from condemnation as an infringment.

"We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one, supposing it to be the other, the first one patented is infringed by the other."

[3] Tested by this rule, there is no doubt in our minds as to the infringement of the defendants. The differences between the two designs are differences of detail and not of substance, they are trivial and inconsequential. Indeed, in examining the exhibits, with our attention emphatically called to the differences between the two, we have more than once taken up the defendants' plate believing it to be the complainant's.

The differences do not affect the general appearance of the plates. Several of the changes are so minute that even an expert would have difficulty in detecting them at the distance of a few feet. Having seen the complainant's design in a show case or shop window, the ordinary buyer would be very likely to mistake the defendants' design for it if seen in similar environment. This is the real test of infringement of design patents. If the ordinary buyer, having seen one of the complainant's dishes and wishing to procure one like it, would be induced to buy one of the defendants' dishes instead, it is enough. That he would be so deceived is plain, not only from the testimony that persons were actually deceived, but also from an examination of the dishes themselves. Their general appearance is so similar, that a minute and careful inspection is required to distinguish the differences.

The defendants' infringement is aggravated by the fact that they use the design on plated ware, whereas the complainant uses it only on sterling silver. The purchaser is thus enabled to secure the design for about one-fifth of its cost, when sold by the complainant.

It is said that Graff was not the inventor, the design being the work of one A. H. Sander. The judge of the Circuit Court found against this contention, and we are not persuaded that his conclusion is erroneous.

The argument based upon so-called "Line 59," is not well founded. The subject is treated at length in the opinion below and we concur in the conclusion of the judge that "Line 59" has no appreciable bearing upon the issues in this controversy.

The decree is affirmed with costs.