STRAUSE GAS IRON CO. v. WILLIAM M. CRANE CO.

(Circuit Court of Appeals, Second Circuit.  April 11, 1916.)

No. 144.

1. PATENTS ☞168(2)—CONSTRUCTION—LIMITATIONS IMPOSED BY PATENT OF-
FICE.

A limitation imposed by the Patent Office to distinguish from prior
references, and accepted by the applicant, cannot be disregarded, although
it may have been unnecessary.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 244; Dec. Dig.
☞168(2).]

2. PATENTS ☞328—INFRINGEMENT—GAS SAD IRON.

The Spahr and Stichler patent No. 948,773, for a gas sad iron, con-
strued in view of the limitations imposed by the Patent Office, held not
infringed.

3. PATENTS ☞150—DISCLAIMER—CONSTRUCTION AND OPERATION.

The differentiation introduced into the claims of a patent by a dis-
claimer must have previously appeared somewhere, either in the draw-
ings or specification; otherwise, the disclaimer becomes no more than
a making over of the whole patent, and the matter discarded must ap-
pear with sufficient clearness to advise the art and to show that it was
comprehended by the patentee.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 224; Dec. Dig.
☞150.]

4. PATENTS ☞28—DESIGNS—INVENTION.

The test of invention is the same for designs as for mechanical patents,
and to show invention the design must have been something beyond the
ability of the ordinary routine designer.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 33; Dec. Dig.
☞28.]

5. PATENTS ☞328—INVENTION—DESIGN FOR SAD IRON.

The Spahr and Stichler design patent, No. 42,443, for a design for a
sad iron, held void for lack of invention.

Appeal from the District Court of the United States for the South-
ern District of New York.

Suit in equity by the Strause Gas Iron Company against the Wil-
liam M. Crane Company.  From the decree, both parties appeal.  Mod-
ified.

This is an appeal by each party from a decree in equity awarding an in-
junction upon a mechanical patent and dismissing the bill upon a design pat-
ent.  The subject-matter of each patent is a gas sad iron, which can be kept
heated by flexible attachment to an ordinary gas pipe.  The mechanical pat-
ent, 948,773, was issued on February 8, 1910, to Spahr and Stichler, and con-
tained seven claims, of which numbers 2 and 7 are as follows:

"2. In a sad iron, a body having intake passages directly in the base thereof,
said base having separated side walls, forming a chamber centrally between
the separated side walls of said base, said passages leading to said chamber,
and a suspended burner having jet openings deflected to the right and left
to said walls, said chamber being between said jet openings, whereby air is
supplied to the inner sides of the flames produced at said jets."

"7. In a sad iron, a body, and a base therefor, said base being centrally
separated forming side walls, there being a chamber centrally between the
same, gas-supplying means, air intake passages directly in said base leading
to said chamber, and a burner suspended from the gas-supplying means and
having jet openings deflected right and left to said walls, said openings flank-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing the top of said chamber, whereby air is supplied from said chamber to the inner sides of the flames produced at said jets."

On May 13, 1914, the assignee, who is the plaintiff here, feeling that the validity of the claims in question might be imperiled by the British patent to Stichbury, No. 3,474 of 1874, filed a disclaimer in the Patent Office reading as follows: "To that part of said letters patent which is described in the second and seventh claims thereof, disclaiming the body described in said claims unless that body has the air escape openings further apart and larger in area than the inner ends of the oppositely located air inlet passages." It is upon claims 2 and 7 as so modified that this suit was brought.

The patent in suit describes an iron with a burner suspended from a gas tube which runs into the handle, the handle and cover of the iron being hinged at the rear, so that the burner may be raised at one end for ignition. In the base of the iron which is thick, runs a chamber or deep longitudinal groove, above, and parallel with, which the burner lies when in position. The burner is perforated with two lines of holes so arranged as to throw two series of jets upon the top of the base which flanks either side of the chamber. From the outside of the base a series of air inlet holes are driven from either side, normal to the line of the chamber, and leading into it, whose function is to draw air into the chamber and so up under the gas jets to supply them with a continuous feed of air. The products of combustion are carried off through vents at the top of the vertical sides of the iron. In the specifications nothing was said of the size of the vents or of their area as compared with that of the inlet air-holes. The figures showed three vents and five inlet air-holes; and joint area of the vents proves to be not very perceptively different from that of the holes, and only after the most careful measurement can the difference be ascertained.

The defendant relied upon noninfringement and invalidity. Upon the latter point he relied chiefly upon the British patent to Stichbury already cited, which showed a reversible gas sad iron, in which the vents in one operation served as the air intake holes in the reverse. The operativeness of this iron in practice was sharply contested at the trial, as well as the question whether it was intended to heat the surface in use by the gas jets or only the upper surface. The defendant's iron has its burner supported in the two ends of the vertical sides of the iron and is not suspended from the gas-supplying means at all. It is in other respects substantially like the plaintiff's iron.

The design patent, 42,443, is also for a sad iron, the infringement being a very near approximation to the design. The defenses are that the subject-matter, being unbeautiful, cannot be patented, and that in any case the art pressed too closely about the design to allow invention.

Hans von Briesen, of New York City (Arthur von Briesen and Fred A. Klein, both of New York City, of counsel), for plaintiff.

William J. Dolan, and Rogers, Kennedy & Campbell, all of New York City (Odin Roberts, of Boston, Mass., and Donald Campbell, of New York City, of counsel), for defendant.

Before COXE and WARD, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). Upon the mechanical patent we are for reversal, for two reasons: First, because the claim is not infringed; and, second, because the disclaimer is invalid. The validity of the patent we do not consider.

[1] We think the claims are not infringed because the use of the term "suspended burner" in claim 2, and the more definite phrase "a burner suspended from the gas supplying means" in claim 7, only included a burner which was held by the gas pipe. A careful scrutiny of the action in the Patent Office leaves us no doubt that this was the

meaning attributed to the phrase by the examiner, and that it was only when the phrase with that meaning was inserted in the two claims in question that he would allow them over the patent to Nickerson, 406,-943. Perhaps it was not necessary, in order to distinguish from Nickerson, that the examiner should have required the insertion of that element; but that was his purpose, and when the patentee consented to the insertion, under the well-settled rule, he accepted the imposed limitation and cannot disregard it now. It is therefore necessary to discuss in some detail what took place in the Patent Office, and for that purpose it is also necessary to take up claim 3.

[2] When the application was originally presented the examiner, in the action of May 10, 1909, at once rejected claims 3, 4, and 5 upon the Nickerson patent. (We may leave out all discussion for the time being of claim 4, because, although the present claim 2 was substituted for it, it is so entirely changed as to leave no resemblance between the two.) Claims 3 and 5, however, became claims 1 and 3 of the patent, and with very little change; but for the purpose in question the history of claim 5 is the more important. The applicant on May 22, 1909, made one change in claim 5: He inserted at the end the words, "a movable top carrying said burner and its supply tube." In other words, he inserted the limitation specifically that the burner must be carried by the top, and by that single change procured allowance. Let us see, then, what the claim covered before this insertion, which he abandoned in the face of Nickerson. It contained the feature of a chamber situated in the center of the base with walls on opposite sides of the chamber and a burner over the chamber with jets deflected to the side walls. Turning to Nickerson's patent, in order to see why the examiner rejected this claim as it stood, it becomes apparent that he must have regarded the vertical ribs, b, as making the walls of the central chamber, because there was nothing else to serve for walls. He must also have thought that it was not a patentable distinction to direct the jets upon the top of these side walls instead of against their sides as Nickerson did. It is true that the words of claim 5 do not limit it to jets upon the tops of the side walls; but the disclosure clearly does, and the phrase, "burner over said chamber" with "deflected" jets, could not have been understood differently in view of the specifications (page 1, lines 91–94).

Now the plaintiff says that the changes made in claim 2 were to distinguish from Nickerson's vertical ribs and from his jets playing upon the sides of the walls. The foregoing analysis of claim 3 is a complete answer to such a position, because it is clear that the examiner thought that claim 3 was anticipated by Nickerson, so long as it was in the same form as claim 2 now is, if that claim be interpreted as the plaintiff desires. In other words, if the word "suspended," in claim 2, is to be interpreted as meaning that the jets must play upon the top of the walls, and if the word "forming" means that the walls shall be other than the vertical ribs, b, then the examiner could never have rejected claim 3 as he did, before the specific addition was made to it. It would obviously be inconsistent to suppose that the examiner took one view of language in claim 3, whose equivalent he took otherwise in claim 2.

But if there be any ambiguity whatever, especially in regard to the meaning of the words "deflected to the right and left to said walls" of claim 2, it is altogether cleared up by considering the history of claim 7. That claim as originally filed had the phrase, "said openings flanking the top of said chamber," yet it was equally rejected upon Nickerson. There can hardly be any reasonable doubt that the language cited referred precisely to that element which the plaintiff now asserts to have been imported into claim 2 by the word, "suspended"; yet, as we have said, it was not sufficient to satisfy the examiner in allowing claim 7. He could only have thought the modification in structure not a patentable distinction, and he must have supposed the very definite phrase, "suspended from the gas-suspended means," a necessary element to patentability. Claim 7 seems to us to be far too definite to allow the modification necessary for infringement. Claim 2 doubtless admits of a much more persuasive argument, yet we feel that, when it is so obvious how the terms were used in the Patent Office, we are not at liberty to disregard the clear understanding of the parties. Hence we find both claims not infringed.

[3] The next point is of the validity of the disclaimer. The element added by the disclaimer to the claims appears nowhere in the specifications, as every one concedes, though it limits the patent to only one species of the genus originally covered by claims 2 and 7. Nothing whatever was said in either claim about the air outlet passages. They were taken for granted and they had appeared generally in the art. As nothing was said of them, no comparison could be made in the claims between their area and those of the air inlet passages, and, although they are mentioned in the specifications, their size does not appear. To introduce that element into the claims was therefore to provide a differentiation not suggested anywhere, unless it be in the figures themselves. When examining the figures, the area of the end of each air inlet passage is not to be compared with the area of each outlet passage, because the air is coming in at all the inlets at once and must get out of all the outlets. We are to take the five air inlet passages disclosed in the figures, and compare their total area with that of the three outlet passages, and then there is grave question whether the total area of the one is greater by any amount than the total area of the other. Moreover, we are not satisfied that a very slight difference in area would be enough, because, although the exact proportion is not perhaps important, where once the principle of relatively large vents is appreciated, yet some indication of substantial difference in area is very important, where the question is whether or not the size of the vents was considered at all.

We do not mean to suggest that a disclaimer may not add a new element to the combination, thereby limiting it to a part only of what was covered by the specifications. That was the effect of the disclaimer in Carnegie Steel Company v. Cambria Iron Works, 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968. We do not mean even to say that a gross and clear element, shown in the figures and not mentioned in the specifications, may not be an adequate basis for a disclaimer, as Judge Wallace held on the second trial of Roemer v. Newman, as re-

ported in Electrical Accumulator Co. v. Julien Electric Co. (C. C.) 38 Fed. at page 136. The figures and the specifications must, of course, be read together. We do think, however, that the differentiation afterwards incorporated into the claims must appear somewhere in either figures or specifications, and that unless it does the disclaimer becomes no more than a making over of the whole patent.

Of course, the patent may not truly describe the invention; the scrivener or the draughtsman may have misunderstood what he was told; the patentees may have been inexperienced in reading such descriptions; they may have clearly comprehended a necessary element, and even disclosed it to their solicitor, without making clear to him what they meant. That would result in an erroneous reduction of the invention to definite form; it would be ground for application for a reissue, and perhaps this patent might be reissued, if the proper evidence were at hand to show that kind of mistake or inadvertence. But the mistake which justifies a disclaimer is not that; it is one which appears upon the face of the patent itself. It must appear that the matter discarded was clearly distinguished within the patent, so that it can be seen that by the disclaimer the patentee rejects an addition which he comprehended as an addition in the patent. The patent must show the differentia of that species to which the patentee wishes later to confine his monopoly. He may not, by suggesting an independent distinction, introduce a new element into the whole invention. Were it not so, he could cover the art most broadly, and later by successive disclaimers return to the public domain so much of the field as he found himself unable successfully to defend. His disclosure would be a mere vague incubus upon the art, frightening off the timid, to be dislodged only by attack, and without danger to so much as might eventually be determined to constitute a genuine invention.

The necessary element should, moreover, appear with sufficient clearness to advise the art; it ought not to depend upon the meticulous niceties of figures, which are at most only diagrammatic. If the specifications were enough, we could disregard the figures; but, where the specifications are silent, the figures should show the detail broadly, and this they do not do. If we are to judge only by the patent, it is extremely doubtful whether the patentees ever had learned that the outlets should be greater than the inlets. The prior art had not thought so, and it is therefore too much to ask us to assume that the proportion was obvious. We think it should have been shown.

The defendant does not in our opinion infringe, and the disclaimer is invalid. A decree dismissing the bill should therefore be entered.

[4, 5] As to the design patent, we agree with the court below that the bill should be dismissed. If there be any room at all in the subject-matter for a design patent, the patentees have not found it. Perhaps the nearest approach to the patented design is Sullivan's patent, 610,836. The proportions are not quite the same, but the ordinary eye would scarcely see the difference when the two were not juxtaposed. The vents at the top are divided; there are no air inlet holes, but those are hardly distinctive feature of design. Perhaps in those respects, Grussi, 75,156, comes nearer to the patent, though the outline

is not the same. Gray, 474,470, is not far away. The modification of these forms into the design patent does not seem to us to have been dictated by other than utilitarian considerations. To suppose that any inventive effort was necessarily addressed towards pleasing even a most rudimentary æsthetic susceptibility appears to us far-fetched. Since the decision of this court in Steffens v. Steiner, 232 Fed. 862, —— C. C. A. ——, decided February 15, 1916, any doubt as to the test of invention in design patents which might arise from Graff, Washbourne & Dunn v. Webster, 195 Fed. 522, 115 C. C. A. 432, Dominick v. Wallace, 209 Fed. 223, 126 C. C. A. 317, and Mygatt v. Schaffer, 218 Fed. 827, 134 C. C. A. 515, must be considered laid, and the test for invention is to be considered the same for designs as for mechanical patents; i. e., was the new combination within the range of the ordinary routine designer? We believe that any one starting to design sad irons with the art before him, and governed only by considerations of proportion and plan, would have had no difficulty in making the plaintiff's iron.

A decree will be entered, modifying the decree below as indicated, with costs to the defendants in this court and in the court below.