WHITING MFG. CO. v. ALVIN SILVER CO., Inc.*

(Circuit Court of Appeals, Second Circuit. May 8, 1922.)

No. 297.

1. Patents ⚷28—Test of invention for design patents same as for mechanical patents.

The test of invention for design patents is the same as for mechanical patents, and invention depends on the state of the art and the room left for invention when the application was filed.

2. Patents ⚷174—Claim for improvement of designs strictly construed.

The rule that claims for improvements in arts already understood must be strictly construed applies to designs as well as mechanical devices.

3. Patents ⚷165—Grant consists only of that described and claimed.

A patentee's grant of privilege consists only in that which is both described and claimed.

4. Patents ⚷167(1)—Drawings of design patent do not control specifications.

The rule that the drawings assist the specification, but do not control, applies to designs, even when the specifications consist largely of references to the design drawings.

5. Patents ⚷328—Design 54,452 not infringed by design using similar ornamentation, but different outline.

The Reimherr design patent, No. 54,452, for a design for handle for spoon, fork, or similar article, "as shown," *held* to cover, not only the ornamentation, but also the configuration or outline, and, as so construed, not infringed by a design using a somewhat similar scheme of ornamentation, but a different contour or outline.

6. Patents ⚷28—Appearance of design may result from configuration, ornamentation, or both.

Appearance, which is the essential consideration in designs, may result from, peculiarity of configuration, or of ornament alone, or of both conjointly.

7. Patents ⚷157(2)—Construed to uphold, and not to destroy.

A design patent should be construed so as to uphold, and not destroy.

8. Patents ⚷252—Infringement requires appropriation of novel elements of patented design.

It is essential to infringement of a design patent that there be an appropriation of the novel elements of the patented design.

9. Patents ⚷252—Impression created by design must be derived from thing patented, and not by selecting a part.

As respects infringement, the new impression created by a patentable design must be derived from the thing patented, and not by an observer

---

⚷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 258 U. S. —, 43 Sup. Ct. 93, 67 L. Ed. —.

selecting a part of the thing patented, and so highly approving thereof that he finds the design in anything that contains the part so approved.

Rogers, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Whiting Manufacturing Company against the Alvin Silver Company, Inc. From a decree for plaintiff, defendant appeals. Reversed and remanded, with directions.

Both plaintiff and defendant are silversmiths, and plaintiff sues as the owner of the Reimherr design patent, 54,452, issued February 10, 1920. This patent is for a "design for a handle for a spoon, fork or similar article," and the application specifies only by reference "to the accompanying drawing." That drawing displays as one figure "the obverse face of a spoon embodying my new design," and in another "view of the tip of the handle" on a larger scale. The drawing of the said tip is here reproduced:

The rest of the handle is familiarly conventional in shape, but the style of ornamentation by paneling, beveling, and ornamental bands is substantially continued throughout the handle length.

Another figure of the drawing gives a "view of the reverse face" of the handle, and is here also reproduced:

Silver flat ware of this style, to which the plaintiff gave the trade-name "King Albert," has been put on the market and attained admitted commercial success, and the design patent therefor, in which the sole claim is "the ornamental design for a handle for a spoon, fork or similar article as shown," is said to be infringed by the flat ware of defendant, marketed under the trade name "Richmond," and fairly represented in the design patent of Gordon, No. 59347.

This patent is drawn in similar style, viz. by merely referring in the specification to a drawing which displays the obverse and reverse of defendant's alleged infringing articles, as follows:

The defense is noninfringement of plaintiff's design as properly limited and construed. The lower court found infringement, and from decree accordingly defendant took this appeal.

The following is the opinion of Learned Hand, District Judge, in the court below:

"The validity of the patent has not been challenged, and wisely, because it is apparent by a glance at the prior art that if the design be taken as a whole—i. e., outline and decoration—there is nothing which comes near it. That it is valid is therefore beyond doubt. But what is the patented design? Certainly not the decoration alone, or the outline alone. The patent, under all the books, must be taken as a unity, and only that infringes it which imitates that unity, Gorham v. White, 14 Wall. 511, 20 L. Ed. 731; Ashley v. Tatum, 186 Fed. 339, 108 C. C. A. 539; Borgfeldt v. Weiss (C. C. A.) 265 Fed. 268; Wilson v. Haber (C. C. A.) 275 Fed. 346; Zidell v. Dexter (C. C. A.) 262 Fed. 145; Ashley v. Weeks-Numan Co., 220 Fed. 899, 136 C. C. A. 465.

"This being true, the real question at issue is whether the defendant has adopted the design so taken as a unity. The cases cited have uniformly followed the rule first laid down in Gorham v. White, supra, which is this: Some departures from the design the patent covers, but they must be small.

They are to be ascertained, not by comparing the design with the infringement, side by side, to see whether they are then distinguishable, either by experts or laymen. The test is whether there is a substantial number of the common run of buyers who, having seen the design, will carry it inexactly enough in their minds to buy the infringement without any conscious choice between the two. So much latitude the patent has in application. Now, it is clear that any such test depends altogether upon the relative emphasis of the different features of the design in the more or less inaccurate memory of those who have once seen and liked it. One man will be impressed with the decoration; another, with the outline; a third, only with the combination of both. And since our memories are entirely the creatures of our interest, what each will carry away depends inevitably upon what has struck his fancy.

"For myself, I feel reasonably sure that I should never have made any mistake between the two. While the defendant's decoration is substantially an exact copy of the design, it is laid upon a spoon end, which chances not to be to my liking, which indeed, seems to me ugly, while the whole design happens to please me. I think this difference would have prevented any confusion in my mind. However, it is extremely hard now, after so much study of the two side by side, to get any just idea of what one would have remembered of the design, had one seen that alone, and then only once. Any conclusion on that score is of the most questionable validity. Besides, a judge is not justified, unless he is forced to do so, to assume that his own judgment is a proper measure of other people's; but he should have recourse to the opinions of such witnesses as by their experience know the habits of buyers in general. The judgment of these alone is of any consequence, when the issue is of the future conduct of the buying public. That was certainly the attitude of the Supreme Court in Gorham v. White, supra, in which the absence of any answer to the plaintiff's evidence that ordinary observers would be confused was made the very turning point of the decision.

"In the case at bar there were called only five witnesses, all told, who had any actual experience in selling silverware to the public—Brogan, Jackson, and White for the plaintiff, and Nash and McCarron for the defendant. Brogan and Jackson thought that confusion would arise in the minds of those who did not have the two before them, and Nash and McCarron thought not. Each was well qualified to speak from his or her experience. White in his direct examination was not examined on the issue at all; all he said about it was upon cross-examination. He thought that a person not having both spoons before him would be mistaken, unless he owned one and had got used to it on his table. As a casual observer comes within the scope of the rule, I think that White must count with the plaintiff. His own refusal to carry the plaintiff's pattern was based upon its similarity with the defendant's, itself a circumstance of some moment.

"So far as I could see, there was nothing in the appearance of these witnesses to help one to distinguish between them on the score either of credibility or competence, and I should not wish to decide such a case upon a merely numerical preponderance of witnesses. The disagreement between them may, however, have arisen only because they were thinking of different kinds of customers. They were faced with an abstraction, necessarily, no doubt, but still an abstraction; i. e. a normal customer. Now, each one of them constructed his answering conception—depended probably in part anyway on reasons of which he was not thoroughly aware himself. It appears to me to be a mistake to assume that any of them inevitably fused in his mind customers of all kinds, or that they would necessarily have disagreed, if they could have done what is probably in any case an impossibility. The important point is that some of them thought that at least a substantial number of customers would in practice confuse the designs, and that these seemed to them not persons of exceptional carelessness. The answer of those who said 'Yes' seems to me inherently better than of those who said 'No,' when the inquiry, as here, does not involve the majority of all customers, but only whether there are numerous persons, not noticeably careless, who would make the required mistake.

"There is another circumstance which somewhat corroborates this conclusion. The decoration is new; the outline old, exactly illustrated at least once before, and approached more than once. It is natural that a new element should catch the attention and remain in the memory of those observers at least to whom it appears as new. What has interested them would be likely to absorb and exclude what has not. If so, the decoration which has predominated in their fancy will be likely to control their decision to buy, rather than the outline.

"The case is indeed a close one, and my past experience has taught me an extreme diffidence of my own judgment in this branch of the law; but upon the whole the balance seems to me to lean a little towards the plaintiff. The patent is highly meritorious, and the distinctively new feature of it has been frankly imitated, no doubt in good faith, if by good faith one means that the defendant was satisfied of its rights. Still I see no reason why a court should be oversolicitous to protect an imitator in such a case. No doubt the plaintiff has always the burden, but when the most original part of the design has confessedly been taken, and it is open at best to grave doubt whether that is not the element which will stick in people's minds, there is no reason to press too hardly upon the sufficiency of the proof that the less striking feature will not always serve to distinguish the two.

"I may add that the tendency in this circuit, so far as I am able to form an opinion, has been to moderate the severity of the test of infringement in practical application. The strictest case was Ashley v. Tatum, supra; certainly Borgfeldt v. Weiss, supra, was more lenient to the patent. It is at least likely that a large number of buyers in the latter case must have noted the absence of so prominent an element as the bathing cap with its huge ears. Any confusion in that case presupposed an observer whose attention had been so attracted by the new and striking grotesqueness of the figure as to disregard an element quite as noticeable as the outline of the spoons in the case at bar. Not quite so much can be said of Ashley v. Weeks-Numan, supra, a case in which there was also no claim, though there was a verbal description; still the distinguishing features were very apparent, if the patent and the infringement were put side by side. While the rule of validity in design patents has latterly been more strictly applied, yet when a design of high merit is presented, the later disposition seems not to have been to allow its value to be lost by narrow construction.

"Judge A. N. Hand's refusal to grant a preliminary injunction was not, it is true, by way of compromise, nor was it the condition of an early trial. Yet it must be a very clear case which could authorize a judge to grant such a motion, and it was natural that when the evidence of infringement was in dispute he should have been unwilling to solve it in the plaintiff's favor. If the test was the impression which the two designs make upon the judge alone, the decision of such a motion might indeed be conclusive, and, as I have said I should myself decide for the defendant; but, if it is not that, it is hard to see how on such a record any one could grant a preliminary injunction.

"Decree for the plaintiff for injunction and accounting before William Parkin, Esq.

Charles Neave and William G. McKnight, both of New York City, for appellant.

Mock & Blum, of New York City (Livingston Gifford, Robert C. Beatty, and Hugo Mock, all of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. [1-4] The test of invention for design patents is the same as for mechanical patents. Strause, etc., Co. v. Crane, 235 Fed. 126, 131, 148 C. C. A. 620. Consequently the state of the art and the room left for invention when application filed must

be considered in respect of both. Claims for improvements in arts already understood must be strictly construed (American, etc., Co. v. Parlograph Corp., 235 Fed. 137, 148 C. C. A. 631); and this is as applicable to designs as to mechanical devices. A patentee's grant of privilege consists only in that which is both described and claimed, while drawings assist the specification, but do not control. Fulton Co. v. Powers Co. (C. C. A.) 263 Fed. 578. This also applies to designs, even when (as is nowadays customary) the specification consists large- ly of references to the design drawings. It is therefore just as essen- tial, in respect of a design patent, to discover exactly what the patentee invented as it is to do the same thing in respect of machines, processes, etc.

But, of course, the substance of any design patent depends upon the nature of designs, as that word is used in patent law. In Dominick v. Wallace, 209 Fed. 223, 126 C. C. A. 317, this court, quoting from Gor- ham v. White, 14 Wall. 511, 20 L. Ed. 731, declared:

"It is the appearance itself * * * that constitutes mainly, if not en- tirely, the contribution to the public [by any design] which the law deems worthy of recompense. The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both conjointly; but, in whatever way produced, it is the new thing, or product, which the patent law regards."

[5] We must, then, first ascertain exactly what is covered by the patent in suit, and here plaintiff contends that it covers nothing but the surface ornamentation, while defendant asserts that the claim covers, and the specification discloses, not only that ornamentation, but also the configuration or outline, substantially "as shown."

On this point we hold with defendant, and such holding is induced by considering that the design is described as specifically for a "handle for a spoon" or similar article, but always for a handle, although the style of ornamentation applied thereto might be and has been used in respect of other ornamented metal objects. Again, there is displayed and described, not only the ornamented obverse of a handle, but a "view of the reverse face," which fact is proof positive of the pat- entee's thought that the simple form of the reverse was just as much a part of his design as the highly ornamental obverse. Further to speak of the reverse and obverse of a design is absurd; the patentee is plainly talking of a handle.

[6] Finally, the eye notices and the testimony shows that the orna- menting of both obverse and reverse is designed and apportioned to the peculiar and characteristic shape of the handle tip, which (ut supra) is specifically shown as a part of the patented ornamental design. Thus, remembering that appearance is the essential consideration in de- signs, and that such appearance may result from "peculiarity of con- figuration, or of ornament alone, or of both conjointly," we are of opinion that this patent is for a design which depends for its appear- ance—for its effect on the eye—upon configuration and ornamenta- tion conjointly.

Argument is submitted for appellant that this result necessarily flows from the nature of the Patent Office proceedings; in that pat- entee did not (as he could have done) separate his ornamental ar-

rangement of bevels, panels, and beadings from any particular form or configuration, and patent that kind of ornamentation; and this he did not in terms do. Therefore, since he did not formally establish a separation in his claim, he must be deemed to have patented all that is exhibited in the drawing, viz. the ornamented handle in its entirety.

But we reach the same conclusion, without expressing any opinion as to the effect of the Patent Office procedure. The matter is mentioned in Rowe v. Blodgett, 112 Fed. 61, 50 C. C. A. 120, and again in Ashley v. Tatum, 186 Fed. 339, 108 C. C. A. 539; and we still think the Office practice in respect of design patents "not only liberal, but lax." That, however, is the affair of the Office and not of this court; this patent was taken out in accordance with current practice, and we decline to impute to mere conformity with Office usage, a technical significance, not imposed by statute.

Our arrival at defendant's result is, as above shown, a holding that plaintiff must stand on his patent as issued; its meaning, intended significance, and asserted scope must be primarily learned from the four corners of the document as it stands, and to us the instrument means that the patentee designed and patented the ornamental part of a handle suitable for many more special uses, and that ornamental part has itself two parts, contour and surface pattern.

[7] A further reason for so reading the patent is that, like all other patents it should be construed so as to uphold, and not destroy. The art of silverware ornamentation is very old; so are the bevels, panels, and beading here shown; and on this record they have been used conjointly in such a multitude of arrangements as to render more than doubtful the possibility of validly patenting the ornamentation as such, and claiming protection thereunder, no matter whether similar ornamentation was used on a tablespoon or an architectural frieze.

But when this particular style of ornament, following in configuration the peculiar shape of a special handle, was patented (as we believe was done by Reimherr), then novelty, utility, and æsthetic or artistic quality are all admitted, and the usual exhaustive record of the prior art before us shows nothing to controvert the assertion that no one before this patentee produced a handle like this, both as to ornamentation and contour or configuration.

[8] The rule as to design infringement has again been discussed at length. We remain of opinion that from Kruttschnitt v. Simmons (C. C.) 118 Fed. 851, affirmed 122 Fed. 1020, 58 C. C. A. 111, through Ashley v. Tatum, 186 Fed. 339, 108 C. C. A. 539, to Wilson v. Haber (C. C. A.) 275 Fed. 346, "the fundamental law of infringement" has not been departed from, viz. that to infringe "there must be an appropriation of the novel elements of the patented design." There are often differences of opinion as to what constitutes the novel elements referred to; it being always admitted that a "Chinese copy" is never necessary. Graff v. Webster, 195 Fed. 522, 115 C. C. A. 432. But equally it is necessary that the novel elements appropriated must constitute the substance of that patented design.

[9] A patentable design "creates a new impression upon the eye" (Graff Case, supra); but that impression must be derived from the

thing patented, and not by an observer selecting a part of the thing patented, and so highly approving thereof, that he finds the design in anything that contains the part he thus approves. This is really the method of plaintiff, and is frankly exhibited by its witnesses. One said (on comparing the commercial product of the parties):

"You notice that the entity of effect, so far as design is concerned, is identical in both. It is merely applied, in my judgment, to a different shape in the" defendant's article.

Another, when asked whether defendant's spoon was "substantially the same design" as plaintiff's, replied:

"Exactly the same as far as the decorative effect is concerned."

And still another, being asked to consider especially defendant's spoon, remarked:

"Of course, we do not have to go into the shape of the spoon at all. That is the last. The ornamentation is what sells the teaspoon, never the shape."

One leading witness, when cross-examined regarding his expressed opinion on the decoration of the spoons, said that he referred to that "on the face of the handle of the spoons," and continued:

"Of course, the back is not decorated; it is simply a structure.
"Q. You do not find any pattern or design on the back? A. No; structure."

This is in effect confining the patented design to the ornamentation of the obverse, and denying to the reverse or configuration of the ornament any part in the same. On the other hand, defendant's witnesses agreed (as one of them said) concerning the two compared products:

"I think really the principal noticeable difference is the tip of the handle.
"Q. And you consider that tip an important and impressive feature of the design? A. I do."

Thus was inquiry made below as to what was the design or thing patented. We resolve the question by considering the application and drawing, but incline to the opinion that by the balance of evidence it was shown in trade opinion that such designs as are exhibited by both parties hereto include the shape, contour, or configuration of the ornamentation, or thing ornamented.

Undoubtedly the rule of Gorham v. White, supra, is to be followed, and if in the eyes of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, the one first patented is infringed by the other. But it was found below, and we do not think it here controverted, that if plaintiff's patented design includes, not only ornamentation, but configuration or contour, no observer could be deceived.

Plaintiff's case rests upon the dissection of the patented design according to some trade surgery; i. e., upon the assertion (ut supra) that it is the ornament that sells the spoon—hence the contour of the alleged infringement, however unlike, is to be disregarded. But a suit on a design patent is not an action for unfair competition, nor for infringement of a trade-mark; it can only succeed when the design as patented has been substantially appropriated, and that has not been done in the present instance.

283 F.—6

We have treated this record as if defendant's beading, etc., were slavish imitations or "Chinese copies" of plaintiff's. This is not true: but it is true that, if a trained eye utterly disassociates the scheme of ornamentation from the contour of the same, or from the shape of the handle, they are very much alike. But the most ordinary purchaser, exercising that inconsiderable amount of care which is also called ordinary, could never mistake defendant's design for plaintiff's, if the latter's patent covers and is valid for a combination of ornament and shape "as shown," and we hold that to be the case.

Decree reversed, with costs, and cause remanded, with directions to dismiss the bill.

ROGERS, Circuit Judge. I dissent. The validity of the patent was not challenged in the court below. It was not challenged because, as that court said, it is apparent by a glance at the prior art there is nothing which comes near it, and it was pronounced valid beyond doubt. That being the case, the sole question in this court is whether the defendant has infringed the complainant's patent, and I think the court below correctly found that it did.

The leading case on design patents is that of Gorham Co. v. White, 14 Wall. 511, 20 L. Ed. 731, decided in 1871, when the rule was laid down as follows:

"We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one, supposing it to be the other, the first one patented is infringed by the other."

In that case there were differences between the plaintiff's design and those of the defendant's in details of ornament, but they were the same in general appearance and effect, and so much alike that in the market and with purchasers they would pass for the same thing. The Supreme Court reversed the court below and held the patent infringed. The court said:

"Unless, therefore, the patent is to receive such a construction that the act of Congress will afford no protection to a designer against imitations of his invention, we must hold that the sale by the defendant of spoons and forks bearing the designs patented to White in 1867 and 1868 is an infringement of the complainants' rights."

In my opinion the identity of design is much closer in the case now before us than that which existed between the patterns involved in Gorham Co. v. White. The following excerpt is from the testimony of a salesman, buyer, and manager of 24 years' experience of one of the leading silverware houses in the country:

"Q. From your experience in selling silverware, would, in your opinion, customers, who came to purchase silver to match the plaintiff's design, if shown the defendant's design, believe that it was a similar design to the plaintiff's? A. Yes, sir.

"Q. And they would purchase articles to match the plaintiff's design of the other company's production? A. Yes, sir; that would be liable to happen frequently."

There is other testimony in the record of similar import, and my own inspection of the silverware which was produced upon the argument in this court convinced me that the resemblance between the two designs was such as to deceive the ordinary observer, within the rule laid down in Gorham Co. v. White, supra. I therefore think the decree should be affirmed.