## KING VENTILATING CO. v. ST. JAMES VENTILATING CO. et al.

(District Court, D. Minnesota, Second Division. February 23, 1927.)

No. 82.

1. Patents ⬅112(3)—Issuance of patent creates presumption of patentable novelty, overcome only by clear proof of lack thereof.

Issuance of patent creates presumption of patentable novelty, which can only be overcome by clear proof that patent office officials were mistaken, and that combination lacks patentable novelty, notwithstanding record does not show that prior art relied on in defense was before examiner when he passed on patent, but pre-

sumption is weakened by fact that examiner did not take prior art into consideration.

**2. Patents ⊚⇒328—50,624, for design for barn ventilator, held void for anticipation and lack of patentable novelty.**

Design patent, No. 50,624, for design for barn ventilator, *held* void for anticipation, lack of patentable novelty, and as constituting mere combination of old patent, requiring mere mechanical skill.

**3. Patents ⊚⇒51(1), 66(4), 70—Inventor loses right to design patent, if invention is previously known to others in this country, or if patented or described in printed publication in this or foreign country (Comp. St. § 9475).**

Under Rev. St. § 4929 (Comp. St. § 9475), inventor loses right to design patent, if his invention has been known or used by others in this country before invention, or if patented or described in any printed publication in this or foreign country before invention, or more than two years prior to his application, and if in public use or on sale in this country, for more than two years prior to application.

**4. Patents ⊚⇒68—Inventor's own publication of device more than two years prior to application for design patent is "disclosure," precluding patent (Comp. St. § 9475).**

Inventor's own publication of device for which he seeks design patent more than two years prior to application is a disclosure within Rev. St. § 4929 (Comp. St. § 9475), and precludes patenting of his invention.

**5. Patents ⊚⇒28—Test of invention for design patent is same as for mechanical patents.**

Test of invention for design patent is the same as for mechanical patent, and invention depends on the state of the art and the room left for invention when application was filed, and invention must be novel and original, and not mere combination of old elements, resulting from mere exercise of mechanical skill.

**6. Patents ⊚⇒180—Claim for improvement of designs must be strictly construed.**

Rule that claims for improvements in arts already understood must be strictly construed applies to designs, as well as mechanical devices.

**7. Patents ⊚⇒165(2)—Patentee's grant of privilege consists only in that described and claimed.**

A patentee's grant of privilege consists only in that which is both described and claimed.

**8. Patents ⊚⇒167(1½)—Drawings of design patents do not control specifications.**

The rule that drawings assist the specifications, but do not control, applies to designs, even when the specifications consist largely of references to the design drawings.

**9. Patents ⊚⇒28—Appearance of design may result from configuration, ornamentation, or both.**

Appearance, which is the essential consideration in designs, may result from peculiarity of configuration or ornament alone, or of both conjointly.

**10. Patents ⊚⇒28—Design patent must disclose something more than ordinary skill in arrangement of common features.**

A design patent must disclose something more than ordinary skill in arrangement of common features in order to be valid.

**11. Patents ⊚⇒252—Design patent is infringed when resemblance deceives observer and induces him to purchase infringing device.**

A design patent is infringed, when resemblance is such as to deceive observer and induce him to purchase device, supposing it to be patented device.

In Equity. Patent infringement suit by the King Ventilating Company against the St. James Ventilating Company and another. Bill dismissed.

Leach & Leach, of Owatonna, Minn., for plaintiff.

Farmer & Tighe, of St. James, Minn. (F. C. Caswell, of Minneapolis, Minn.), for defendants.

MOLYNEAUX, District Judge. This is a suit for an injunction and accounting for alleged infringement of United States patent No. 50,624, applied for January 19, 1917, and granted April 17, 1917. The defenses are: (1) Invalidity of the patent for want of patentable invention. (2) Anticipation. (3) Noninfringement.

Both King Ventilating Company and St. James Ventilating Company are Minnesota corporations, duly incorporated under the laws of the state of Minnesota. The defendant C. C. Jolly is the president and manager of the defendant company; the plaintiffs are engaged in manufacturing and selling barn ventilators at Owatonna, Minn. The defendant company is engaged in the manufacture and sale of barn ventilators at St. James, Minn. One Louie Klima, of the city of Owatonna, applied for and was granted United States patent No. 50,624, but by an instrument in writing, dated April 26, 1918, sold and assigned all his right, title, and interest in and to said letters patent, to the full end of the term of 14 years, to the plaintiff herein, which assignment was duly recorded in the Patent Office of the United States on May 8, 1918, in Letters Patent, page 419 of Transfers of Patents.

All of the ventilators manufactured by complainant under said letters patent have been marked patented, together with the day and year of the date of said letters patent. Before the commencement of this suit defendants were duly notified by the plaintiff of said claimed invention and requested to refrain and desist from infringement there-

of; but defendants continued to manufacture and sell the claimed infringing ventilators.

The controlling facts are covered by a fact stipulation entered into by the parties and filed in this case. Much of the evidence introduced at the hearing is merely enlargement of the matters contained in the stipulation.

Paragraph 3 of the stipulation and the oral evidence shows that during the years 1913, 1914, 1915, 1916, 1917, and 1918 the plaintiff made and sold large numbers of the ventilators of the design portrayed in photograph, Defendant's Exhibit AA; that such ventilators made and sold by plaintiff have been in public use since the year 1913; and that Defendant's Exhibit AA and Defendant's Exhibit BB are photographs of such ventilators actually in use by W. S. Moscrip, of Lake Elmo, Minn., since 1913. The ventilators shown in Exhibits AA and BB are like plaintiff's patent in Plaintiff's Exhibit 4–A in every respect, except the base in AA and BB are not flared.

Paragraph 4 of the fact stipulation shows that the book, Defendant's Exhibit DD, is a copy of a publication widely circulated during the year 1913; that Louie Klima, the patentee of the patent in suit, was general manager of complainant, company, and author of the subject-matter of said publication appearing at pages 1–A to 1–H, inclusive, of Defendant's Exhibit D. The ventilator shown in the publication is practically the same in appearance and design as plaintiff's design, except that the base is not flared as it is in the plaintiff's patent design.

Paragraph 5 of the fact stipulation shows that J. J. Sobolik, of Cresco, Iowa, doing business under the firm name of Queen Cupola Manufacturing Company, has continuously since the time prior to 1910 manufactured and sold sheet steel cupolas of the design portrayed in Defendant's Exhibit KK, catalogue of Queen Cupola Manufacturing Company; that prior to 1910 Louie Klima, patentee of the patent in the present suit, was associated with J. J. Sobolik in the business of manufacturing and selling cupolas of said design.

Paragraph 6 shows that A. R. Voss, of St. James, Minn., is the owner of a barn constructed in the year 1898, equipped with cupolas or ventilators having the bases thereof flared, as portrayed in Defendant's Exhibit HH, Defendant's Exhibit II, Defendant's Exhibit JJ, and shows that said Voss is the owner of a second barn constructed in the year 1895, equipped with cupolas or ventilators having the bases thereof flared, as portrayed in Defendant's Exhibit LL and Defendant's Exhibit MM.

The stipulation of facts shows that at the time the application for the patent in suit was made, January 19, 1917, Klima, the patentee, had knowledge of the old Queen design (stipulation, Defendant's Exhibit KK, page 6), and of the old original design of complainant (stipulation, Defendant's Exhibit AA, Defendant's Exhibit BB, Defendant's Exhibit DD, at page 1–3).

1. For convenience of discussion I divide plaintiff's patent into two parts, calling that part above the base the "superstructure," and the base the "flared base." It appears from the history of the present patent in the Patent Office that the Patent Office was not informed by the patentee of the various ventilator structures in evidence, none of which were, so far as appears here, ever patented. [1] It is apparent that the art relied upon by the defendant was not before the Examiner in granting the present patent. The issuance of the patent creates the presumption of patentable novelty, which presumption can only be overcome by clear proof that the officials of the Patent Office were mistaken and that the combination lacks patentable novelty. I think this is true, although the record does not show that the prior art relied upon in defense was before the Examiner at the time he was passing upon the patent, but it must be held that, such being the case, the presumption is weakened by the fact that the Examiner did not take into consideration the prior art herein relied upon. [2] My conclusion from the evidence is that both the superstructure and flared base were separately anticipated in the prior art by more than two years before the filing of Klima's application for the present patent. Plaintiff became the owner of the patent by assignment from Klima. The stipulated facts show that Klima cannot claim a patent for anything existing in said Queen design, or in complainant's original design, or in the design of the flared base cupolas constructed for Voss in 1895 (stipulation, Defendant's Exhibits HH, II, JJ, LL, and MM). He applied for the patent years too late.

The evidence shows that Klima, the patentee of the patent in the present suit, cannot claim any contribution, except that he combined with the flared base, which was old, this superstructure above the flared base, which was old, in both configuration and ornamentation. In his application for patent, Klima states that the following is a specifi-

cation, reference being had to an accompanying drawing and forming a part thereof:

"Be it known that I, Louie Klima, a citizen of the United States, residing at Owatonna, in the county of Steele and state of Minnesota, have invented a new, original, and ornamental design for ventilators, of which the following is a specification, reference being had to the accompanying drawing, forming a part thereof: The figure is a perspective view of a ventilator, showing my new design.

"I claim: The ornamental design for a ventilator, as shown.

"[Signed] Louie Klima."

The following, if not a facsimile, is an approximate drawing of the design, and will illustrate what I have to say:

[3] "Under section 4886, R. S. [Comp. St. § 9430], an inventor loses the right to a patent on his invention if it has been known or used by others in this country before his invention, if patented or described in any printed publication in this or any foreign country before his invention, or more than two years prior to his application; and if in public use or on sale in this country for more than two years prior to his application." Chapman v. Beede, 54 App. D. C. 209, 296

F. 956, 958. This is true, also, under section 4929, R. S. (Comp. St. § 9475).

If Klima, the patentee of the patent in suit, invented the design involved (stipulation, Defendant's Exhibit DD, p. 1–E) said design became public property by publication more than three years before January 19, 1917, the date of the filing of the application for said patent.

[4] It is a disclosure, within the meaning of Revised Statutes section 4886 (Comp. St. 1916, § 9430), for an inventor, seeking a patent to have published a design of the patent more than two years prior to the application; and precludes the patenting of his invention. A printed manual showing the device is a prior "printed publication" within the meaning of said section 4886, Rev. Stat. U. S. (Comp. St. 1916, § 9430); and its effect upon the patent in suit is in principal as if the manual had been put out by a stranger. Wagner v. Meccano Limited (C. C. A.) 246 F. 603, 607, citing James v. Campbell, 104 U. S. 356, 382, 26 L. Ed. 786; Schieble Toy & Novelty Co. v. Clark (C. C. A.) 217 F. 760, 766, 133 C. C. A. 490.

This is true, also, under section 4929. Klima secured his patent under section 4929, R. S., which reads as follows:

"Any person who has invented any new, original, and ornamental design for an article of manufacture, not known or used by others in this country before his invention thereof, and not patented or described in any printed publication in this or any foreign country before his invention thereof, or more than two years prior to his application, and not in public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law and other due proceedings had, the same as in cases of invention or discoveries covered by section forty-eight hundred and eighty-six, obtain a patent therefor."

The design of complainant's original ventilator (stipulation, Defendant's Exhibits AA, BB), the design of the Queen Cupola (stipulation, Defendant's Exhibit KK, p. 6), and the designs of the Voss flared base cupolas (stipulation, Defendant's Exhibits HH, II, JJ, LL, and MM) became public property by many years of use before the date of the application by Klima which involved the patent in suit.

2. The defendant claims lack of invention in the present patent. It is the theory of the plaintiff that there is some degree of novelty and invention in the combination of

the old flared base with the old ornamental top. All that Klima did was to apply the old flared base to the old superstructure. He took them as he found them, both in the configuration and ornamentation. The architecture thus used by Klima resulted in a structure with better lines; it is more pleasing to the eye when constructed on the ordinary barn than the old top with the vertical base. This is evidenced by the fact that the present structure is received by the public with much greater favor than the old, and is also evidenced by the fact that the defendant is using it in his business.

However, if the thing done by the patentee does not rise to the level of invention, he cannot claim the reward of invention. In Knapp v. Will & Baumer Co. (C. C. A.) 273 F. 380, the patent invented was a design patent for an improvement in candles. The District Court held that the patent was valid and infringed. 253 F. 191. The Circuit Court reversed the District Court, and in their opinion say:

"The design law was intended to encourage the decorative arts. It therefore deals with the appearance of the thing designed, rather than with its structure, uses, or functions. *But in a design patent, as in a mechanical patent, the subject-matter must be novel, and must have called for an exercise of the inventive faculties. If either of these essentials is absent, the patent cannot be sustained.* In order that there may be novelty, the thing must not have been known to anyone before. Mere novelty of form is insufficient. O'Reilly v. Morse, 15 How. 62, 14 L. Ed. 601. The patent in suit is a square candle. But any one had as much right to make a candle square as to make it round. There are some standard forms and shapes that are known to every one and inherently open to any one to use. *The right to make any article round or square is open to all. Novelty cannot be predicated of either. But it is equally plain that to make candles square, instead of round, does not involve any exercise of the inventive faculties, and invention is required as much in design patents as in other kinds of patents.* It has been held that design patents stand on as high a plane as utility patents, and require as high a degree of exercise of the inventive or original faculty. Perry v. Hoskins (C. C.) 111 F. 1002; Myers v. Sternheim, 97 F. 625, 38 C. C. A. 345; Western Electric Mfg. Co. v. Odell (D. C.) 18 F. 321."

While it is true that the use of the flared base added beauty to the design, that is not enough to entitle the designer to a patent.

[5-9] In Whiting Mfg. Co. v. Alvin Silver Co., Inc. (C. C. A.) 283 F. 75, 78, the court said:

"The test of invention for design patents is the same as for mechanical patents. * * * Consequently the state of the art, and the room left for invention when application filed, must be considered in respect of both. Claims for improvements in arts already understood must be strictly construed, * * * and this is as applicable to designs as to mechanical devices. A patentee's grant of privilege consists only in that which is both described and claimed, while drawings assist the specification, but do not control. * * * This also applies to designs, even when (as is nowadays customary) the specification consists largely of references to the design drawings. It is therefore just as essential, in respect of a design patent, to discover exactly what the patentee invented as it is to do the same thing in respect of machines, processes, etc. But, of course, the substance of any design patent depends upon the nature of designs, as that word is used in patent law. In Dominick v. Wallace, 209 F. 223, 126 C. C. A. 317, this court, quoting from Gorham v. White, 14 Wall. 511, 20 L. Ed. 731, declared: 'It is the appearance itself * * * that constitutes mainly, if not entirely, the contribution to the public (by any design) which the law deems worthy of recompense. The appearance may be the result of peculiarity of configuration, or of ornament alone, or of both conjointly; but, in whatever way produced, it is the new thing, or product, which the patent law regards.'

"We must, then, first ascertain exactly what is covered by the patent in suit, and here plaintiff contends that it covers nothing but the surface ornamentation, while defendant asserts that the claim covers, and the specification discloses, not only that ornamentation, but also the configuration or outline, substantially 'as shown.' On this point we hold with defendant, and such holding is induced by considering that the design is described as specifically for a 'handle for a spoon' or similar article, but always for a handle. * * * Further to speak of the reverse and obverse of a design is absurd; the patentee is plainly talking of a handle. * * * Thus, remembering that appearance is the essential consideration in designs, and that such appearance may result from 'peculiarity of configuration, or of ornament alone, or of both conjointly,' we are of opinion that this patent is for a design which de-

pends for its appearance—for its effect on the eye—upon configuration and ornamentation conjointly. * * * Plaintiff's case rests upon the dissection of the patented design according to some trade surgery; i. e., upon the assertion * * * that it is the ornament that sells the spoon."

Quoting again from Knapp v. Will & Baumer Co., the court said:

"It is true that invention may reside in a new combination of old elements. Every new combination of old elements, however, is not patentable. But as this court said in Steffens v. Steiner, 232 F. 862, 147 C. C. A. 564: 'The question in the case at bar is not whether a design patent can be sustained, although each separate element in the design may be old, but it is whether what has been done in assembling the old elements in the new designs rose in these particular cases to the level of invention.' And in Strause Gas Iron Co. v. William M. Crane Co., 235 F. 126, 148 C. C. A. 620, this court again said: 'The test for invention is to be considered the same for designs as for mechanical patents; i. e., was the new combination within the range of the ordinary routine designer?' In both of these cases this court held design patents void for want of invention. In what was held in those cases we were simply applying the doctrine which was announced in Smith v. Whitman Saddle Co. [C. D. 1893, 324; 63 O. G. 912] 148 U. S. 675, 13 S. Ct. 768, 37 L. Ed. 606, in which case the court approved the following statement: 'To entitle a party to the benefit of the act, in either case, there must be originality, and the exercise of the inventive faculty. In the one, there must be novelty and utility; *in the other, originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful, or beautiful they may be in their new role, is not invention.'* We are quite at a loss to find in the patent in suit anything 'akin to genius' in what the patentee did. We find nothing beyond the ability of the ordinary routine candle maker. What was done did not rise to the level of invention."

I think the language of the above quotation applies to this case. What the patentee did here would be expected of any architect of taste and accomplishment; and, if he failed to produce graceful lines, it would merely show lack of ability. We are considering this design from the standpoint that the only

thing that the patentee did was to combine the old base with the old superstructure.

There has been some lack of architectural beauty in the appearance of barns. It is because the farmers have not seen fit to incur the cost of employing accomplished architects, or architects at all, and have not felt that they were able to build ornate barns, and pay added expenses of employing real architects, and the expense of building barns for beauty.

I do not believe it can be said in this case that the application of the old flared base to the old top or superstructure rises to the point of anything more than the ordinary routine skill of a competent architect. As was said in the above quotation: "The adaptation of old devices or forms to new purposes, however convenient, useful, or beautiful it may be in their new role, is not invention."

There was nothing akin to genius in Klima's design, if we consider that all he did was to combine an old base with an old top. It was held in Knapp v. Will & Baumer Co., supra, in which was considered a candle design which consisted of taking an ordinary coach candle, making it square, and giving it a fluted and tapering base, both of which belonged to the prior art, does not show invention. The court in that case said: "The right to make any article round or square is open to all." So the right is open to all, in building an ordinary structure, consisting of common features known to the art, such as that under consideration here, to vary the shape of the base.

[10] The rule is that "A design patent must disclose something more than ordinary skill in arrangement of common features in order to be valid." Imperial Glass Co. v. A. H. Heisey & Co. (C. C. A.) 294 F. 267, 269; Boldt v. Nivison (C. C. A.) 194 F. 871; Mygatt v. Schaffer (C. C. A.) 218 F. 827; Steffens v. Steiner (C. C. A.) 232 F. 862.

In the above-quoted case the patent design involved was a round bowl for containing fruit, preserves, etc. The patent substituted for an existing piece of glassware, having flutes, a slightly different form of flute, already in common use on other articles. The court said:

"While we do not question that patentable designs may arise from regrouping familiar forms and decorations, yet when all that was done was to take an existing piece of table glassware having these flutes, and substitute a slightly different form of flute already in common use on other articles of domestic table glassware, we are satisfied

that there can be no patent monopoly"—citing Smith v. Whitman Co., 148 U. S. 674, 13 S. Ct. 768, 37 L. Ed. 606; Knapp v. Will & Baumer Co. (C. C. A.) 273 F. 380; Whiting v. Alvin Silver Co. (C. C. A.) 283 F. 77.

In Smith v. Whitman Saddle Co., 148 U. S. 674, 13 S. Ct. 768, 37 L. Ed. 606, a patent was granted for an improved design for saddles, which was designed by taking the front half of a saddle previously known as the "Granger tree" and the rear half of a saddle known as "Jenifer saddle," and changing the Granger tree so as to have a perpendicular drop of same at the rear of the pummel. The court said:

"Nothing more was done in this instance (except as hereafter noted) than to put the two halves of these saddles together in the exercise of the ordinary skill of workmen of the trade, and in a way and manner ordinarily done. The presence or the absence of the central open slot was not material, and we do not think that the addition of a known cantle to a known saddle, in view of the fact that such use of the cantle was common, in itself involved genius or invention, or produced a patentable design."

By reason of another feature in the improvement the court held the patent design valid.

In the present structure the patentee has appropriated structural features which have long been common stock of all, and combined them by the exercise of good taste, but in doing so has not used more than ordinary skill in arrangements of the common features, and in my opinion has not created a patentable design.

[11] 3. If I am wrong in my conclusion that the patent is invalid for want of invention and anticipation, then I am satisfied that the defendant has infringed the plaintiff's patent. "A design patent is infringed, where resemblance of another device is such as to deceive an observer and induce him to purchase the latter, supposing it to be the former." Protex Signal Co. v. Feniger et al. (C. C. A.) 11 F.(2d) 43. I think that is the case here. A mere inspection of the drawings of the two designs satisfies me that such is the fact.

Summing up: I hold patent No. 50,624, granted April 17, 1917, to Louie Klima, is now owned by the plaintiff, King Ventilating Company, is invalid, and the bill should be dismissed. A decree may be prepared in accordance with this decision, and submitted to counsel for the plaintiff as to form, before being submitted for signature.