## In re SCHNELL.
### Patent Appeal No. 2543.

Court of Customs and Patent Appeals.
Jan. 12, 1931.

Stuart C. Barnes, of Detroit, Mich. (Lacey Laughlin, of Detroit, Mich., and Chas. M. Thomas and Francis D. Thomas, both of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner, rejecting a claim for a design patent as follows:

"The ornamental design for an interior fitting of an automobile body or similar article, substantially as shown."

There is also a statement in the specification as follows:

"The design, as here shown, is applied to a handle, but it is also applicable to other fittings of an automobile."

The title suggested by the Examiner and approved by the board was "automobile door handle or similar article."

Applicant's drawing shows a side and front view of an automobile body door handle, composed of two parts—a plate to be fastened to the inside of the door and a movable handle which fits into the plate. The handle resembles the ordinary door knocker handle in appearance. The drawing shows the handle to be about four inches long by one inch wide at the widest place, tapering to less than one-half inch at the lower end, the handhold portion of same being curved downward and inward so as to present the appearance from a side view of about one-fourth of the circumference of a circle. Aside from the lines, indentations, and raised portions making up the general shape and configuration of the article as a whole, there is but very little ornamentation on the same. It is designed to be placed in a vertical position on the door.

It is admitted that the design claimed is novel and involves invention, but the Examiner and the board held that the design set forth in the claim was "too generic and indicates a wider range of embodiment of the design than the specific article illustrated in the drawing."

In the decision of the Board is found the following:

"A design must be considered as an entirety and there is no such thing in a design patent as generic and specific claims. The patent is for the embodiment of a design in the form of the specific article illustrated. It may be that an infringer will adopt some definite, integral portion of the design which is novel and embody it in a different article but it is for the courts to determine whether he shall be held as an infringer.

"All that can be covered by the design patent is the ornamental form given to the article of manufacture illustrated in the drawing.

"The brief points out that in the interior of an automobile there are numerous articles of hardware and that the same design may be adapted to the different articles so that they will present a general resemblance or harmony of design but it is obvious that the design of the handle as a whole cannot be used in a different article like an escutcheon plate or a robe rail, a lamp support or even a different form of handle but it is modified in each case to adapt it to the article although it still embodies some outstanding feature of the original design which produces a general resemblance throughout the whole set. Whether they are different designs or whether it is an infringement to use a prominent part of the design in an article of different shape and for a different use can be determined only by the court when the matter is brought before it.

"In our opinion the title suggested by the examiner such as 'automobile door handle or similar article' is as broad as appellant is entitled to. See Ex parte Guinzburg, 1925 C. D. p. 159."

Questions quite similar, if not identical with the one at bar, have been frequently ruled upon in the Patent Office, many of which rulings are in direct conflict with others. No decision of any court has been cited to or found by us bearing directly upon this question.

It has often been argued that a design patent, under existing law, may consist of a picture, pattern, print, or design for the ornamentation of an article of manufacture, which may be shown on paper without regard to the particular article of manufacture it is to adorn, and be the subject matter of ownership, use, and consequent protection, irrespective of the kind of article of manufacture it is to ornament, and irrespective of the configuration, shape, and appearance the article may have when so ornamented. This contention, carried to its logical conclusion, suggests that such a design patentee is entitled to a patent upon the same without any regard to whether it really improves the appearance of the article to which applied or not, and that the invention is the design per se. In substance, this is the gist of the argument of appellant in a well-prepared brief.

In view of a consideration of the context of the present law and its predecessors, and the history connected with design patent legislation, this line of argument, when subjected to certain limitations and qualifications, is not without force.

The solicitor for the Patent Office defends the action of the board in the case at bar chiefly with the contention that the ruling is in accordance with the "uniform practice of the Patent Office for many years," which "is

entitled to much weight being the construction adopted by a coordinate branch of the Government," and, to illustrate the rulings of the Patent Office, which, he says, require "that design patents must be for a single article of manufacture," cites Ex Parte Schraubstadter, 1904 C. D. 229, 110 O. G. 2015; Ex parte Remington, 1905 C. D. 28, 114 O. G. 761; Ex parte Litle, Jr., 1910 C. D. 227, 160 O. G. 1272; Ex parte Hopkins, Jr., 1923 C. D. 105, 317 O. G. 238. We may dispose of this contention of the solicitor, at this point, by saying that, in view of rulings in certain cases hereinafter referred to, no such uniform practice in the Patent Office in this respect is shown to have prevailed for a very long period of time. Certainly such rulings have not been sufficiently uniform for such a period of time as to justify this court in refusing to construe the language of the statute, when the question is squarely presented, and presented for the first time to any tribunal other than those of the Patent Office.

Congress in 1842, under the authority granted by article 1, § 8, of the Constitution, enacted the first design patent law (Statute II, August 29, 1842, c. 263, 5 Stat. 543), section 3 of which law was in part as follows:

"Sec. 3. * * * Any citizen * * * who by his * * * own industry, genius, efforts, and expense, may have invented or produced any new and original [1] design for a manufacture, whether of metal or other material or materials, or any new and original [2] design for the printing of woollen, silk, cotton, or other fabrics, or any new and original [3] design for a bust, statue, or bas relief or composition in alto or basso relievo, *or any new and original* [4] *impression or ornament, or to be placed on any article of manufacture, the same being formed in marble or other material, or any new and useful* [5] *pattern, or print, or picture, to be either worked into or worked on, or printed or painted or cast or otherwise fixed on, any article of manufacture, or any new and original* [6] *shape or configuration of any article of manufacture* not known or used by others before his * * * invention * * * may make application * * * to the Commissioner of Patents * * * and the Commissioner * * * may grant a patent therefor. * * * *"* (Italics and numbers ours.)

The only enforcement provision that was then enacted is found in a subsequent section of the same act, and does not purport to cover the same subject-matter as does the enforcement provision now in force, which was enacted on February 4, 1887, c. 105, 24 Stat. 387 (35 USCA § 74), and is in part as follows:

"That hereafter, during the term of letters patent for a design, it shall be unlawful for any person other than the owner of said letters patent, without the license of such owner, *to apply the design secured by such letters patent, or any colorable imitation thereof, to any article of manufacture.* * * * *"* (Italics ours.)

By the Act of 1861, c. 88, § 11, 12 Stat. 248, and the Act of 1870, c. 230, § 71, 16 Stat. 209, section 3, supra, was slightly changed in wording, and became section 4929 of the Revised Statutes of 1874, which section reads as follows:

"Sec. 4929. Any person who, by his own industry, genius, efforts, and expense, has invented and produced any new and original [1] design for a manufacture, bust, statue, alto-relievo, or bas-relief; any new and original [2] design for the printing of woolen, silk, cotton, or other fabrics; any new and original [3] *impression, ornament, patent, print, or picture to be printed, painted, cast, or otherwise placed on or worked into any article of manufacture*; or any new, *useful,* and original [4] shape or configuration of any article of manufacture," etc. (Italics and numbers ours.)

In 1902 Congress amended section 4929, Revised Statutes, supra (35 USCA § 73), to read in part as follows:

"Any person who has invented any new, original, and ornamental *design for an article of manufacture,*" etc. (Italics ours.)

In Ex parte Fulda, 1913 C. D. 206, 194 O. G. 549, Commissioner Moore, having under consideration the preamble of a specification reading: "A new, original and ornamental design for an article of manufacture," reviewed the history of design patent legislation in a very interesting and instructive manner. After setting out the original section 4929 of the Revised Statutes, supra, and the quoted part of the amended section now under consideration, he said:

"Congress did not, in amending the act in 1902, intend to omit as proper subjects for a design patent—any new and original impression, ornament, patent, print, or picture to be printed, painted, cast, or otherwise placed on or worked into any article of manufacture." [1]

---

[1] See Ex parte Cady, 1916 C. D. 57, 232 O. G. 619, for a full discussion of this subject. See also Ex parte Knothe, 1903 C. D. 42, 102 O. G. 1294.

As far as we are advised, no one has ever expressly denied the correctness of this statement of law except as such denial may be implied from rulings in the Patent Office which can be justified only on the theory that the statement is incorrect. See Ex parte Guinzburg, 1925 C. D. 159, 341 O. G. 1049, which is relied upon by the Board of Appeals in this case.

The Commissioner in the Fulda Case further said:

"Former Commissioner Allen drafted the section of this statute as it now appears primarily for the purpose of substituting the word 'ornamental' in place of the word 'useful' in the former statute. That it was not the intention in using the term 'article of manufacture' in place of the specification of particular matters in the prior statute to omit any of them clearly appears from the following extract from a memorandum submitted by Commissioner Allen to the committees of Congress having the bill in charge:

"'Section 4929, as it stands at the present time, contains the specific statement of a number of different subjects to which designs may be applied. The proposed statute removes all this specific statement, for the reason that as the statute stands it does not include all the subjects which ought to be included, and from the inclusion of a portion it suggests the non-inclusion of those not mentioned. It is to be noticed, however, that in spite of this enumeration of subjects of designs, the act of February 4, 1887, which furnishes a remedy for infringement of design patents, gives this remedy against those who, without the consent of the owner, apply the design secured to "any article of manufacture," or to those who sell or expose for sale "any article of manufacture to which such design" shall be applied. Therefore, if the remedy is in terms applicable to any article of manufacture, the enabling act means nothing more by the enumeration of a lot of different subjects, and they have been on this account removed from the proposed statute.'

"In his specification applicant states that he has produced an ornamental design for an article of manufacture, and states how it may be applied to said article of manufacture almost in the words of section 4929, Revised Statutes, prior to its amendment of 1902.

"That a patentable design may consist of surface ornamentation adapted to be applied to an article of manufacture without reference to the general form or configuration of said article is set forth by Robinson in his work on patents in paragraphs 204 and 206, as follows:

"'Par. 204. Design may consist in configuration or ornamentation or both.

"'A design may consist in the simple configuration of a substance or the form given to it as a whole, or in the ornamentation imposed upon it without reference to its general form, or in such configuration and ornamentation both. Thus the essential characteristics of the appearance imparted to a substance may reside in its exterior outlines only, or in the decorations formed by lines or images imposed upon its surface, or, in the union of certain outlines and decorations to produce the given design. The same substance, therefore, may exhibit two entirely different designs, one in its outline, the other in its ornament; or one design alone, into which both its form and decoration enter as essential elements.

"'Par. 206. Essential attributes of a design.

"'The essence of a design resides in the idea of that configuration or ornamentation which constitutes the new appearance given to the substance. If this idea embraces outline only, no change in decoration will disturb its identity unless the apparent configuration of the substance be also changed. If it relates to the adornment of a substance of some known external form, the form may be indefinitely varied and yet the design of ornament remain the same. Where both configuration and adornment, being new, enter into the same design, a change in the necessary attributes of either changes the essence of the whole design; but when though new they are distinct designs, each stands upon a separate foundation and can be affected only by a variation in its own essential elements. Moreover, the identity of a design is not destroyed by its imposition upon different substances unless the inherent qualities of the substance cause the outline or the ornament to assume a different appearance; and hence the impartation of an old appearance to a new material is not alone sufficient to create a new design.'

"Former Commissioner Butterworth in Ex parte Traitel (1883 C. D. 92, 25 O. G. 783) set forth as a general rule, to which there may be rare exceptions, that a design is independent of the material of which the article of manufacture is composed and that a design is capable of being described or delineated on paper without reference to the material used in the construction of the article.

"Where a design is for the form or configuration or involves the relative proportions of parts of an article of manufacture, said

article of manufacture must necessarily be disclosed in the application. Where, however, as in the present case, the design is for an ornament adapted to be applied to any article of manufacture, I fail to find in the statute any requirement that the applicant shall disclose his design as applied to some particular definite article of manufacture, as required by the Examiner.

"Furthermore, I fail to find any instance where the courts have held a design patent invalid where the design consisted of surface ornamentation, but without showing it applied to a specific article of manufacture. On the contrary, in Graff, Washbourne & Dunn v. Webster et al. ([C. C.] 189 F. 902) affirmed by the court of appeals for the second circuit in 195 F. 522, Design Patent No. 40,009, granted May 25, 1909, to Graff, was held valid, though showing merely a border-section. The specification of this patent states that the invention is for a 'new, original and ornamental design for border sections,' and the claim reads 'the ornamental design for a border section as shown and described.' No specific mention is made of any article of manufacture to which the border-section may be applied, nor is any shown in the drawing."

The Commissioner in the Fulda Case reversed the decision of the Examiner, who had refused the application because the drawings did not show the design applied to any complete article of manufacture.

In Ex parte Cady, 1916 C. D. 57, 232 O. G. 619, in a decision by Assistant Commissioner Clay, the decision in the case of Ex parte Fulda, supra, was modified. In the Cady Case the Examiner rejected the claim which was worded: "The ornamental design for articles of manufacture as shown and described."

In the specification applicant stated that the same "was adapted to be embodied in various articles of manufacture, such as toys, composition figures, etc., or as an ornamentation for *any* article of manufacture." (Italics ours.)

The design consisted of the picture of a rabbit, called "Peter Rabbit." The Commissioner held that the applicant sought to get a patent on his design per se to be applied, in any manner, to anything, and refused to allow the claim and application as quoted, but suggested that it should be amended to read: "The ornamental design for an article of manufacture as shown and described," or: "The ornamental design for a manufactured figure as shown and described."

In the decision Assistant Commissioner Clay said:

"* * * While the statute requires the applicant to specify some one particular article of manufacture to which he *has* applied the design, it seemingly cannot be required that his patent be limited to any one article. It is for the court to decide what other articles, having this figure embodied in them, infringe the patent. The applicant may, if he chooses, claim the design for an ornamental figure.

"It would seem from the act of February 4, 1887, read literally, that if the applicant patents the figure as a design for a dinner-card, no other person could lawfully 'apply' the figure to a doll. No decided case has been found to guide us on this point, and until some court has definitely spoken it will be safer and, I think, more proper for the applicant to state in his specification that his design is to be used as the figure of an enumerated number of articles of commerce. He may not of course say anything to intimate that he has patented the picture of Peter Rabbit *per se* as for a tail-piece to adorn a book, for that is purely the work of an artist author and is not patentable." (Italics quoted.)

The Assistant Commissioner further held that:

"It is clear, therefore, that design patents may be granted only for embodied designs— i. e., things having both the attributes of attractive appearance and of utility in commerce, the appearance having the function of enhancing the value of a useful article.

"The design invention thus occupies a position intermediate between the mechanical invention, having a purely utilitarian function, and the art product of authorship, having a purely esthetic function. Like the former, the applied design must have a purpose and utility in commerce; but, like the latter, it must have esthetic qualities, its very utility resulting from the fact that its appearance adds attractiveness, and hence commercial value, to the article embodying it."

The applicant in Cady, supra, amended his design, but insisted upon setting forth in his specification that his rabbit design "may be applied to a bed quilt, handkerchief," etc., and in Ex parte Cady, 1916 C. D. 62, 232 O. G. 621, Assistant Commissioner Clay in a second decision involving the same invention pointed out that:

"A disembodied design or mere picture is not the subject of patent, and it follows that the specification must not so indicate.

"It appears to be very difficult to steer a middle course between the extreme views of those who consider that a disembodied design is patentable and the Examiner's sometimes too strict interpretation that the design patent is for the article itself to which the design is applied. Both views are erroneous. The invention is not the article and is not the design PER SE, but is the design APPLIED. When the applicant has shown the design applied to one article, he has fulfilled the requirement of reducing the invention to practice, and he may state other articles to which the design is to be applied, if, and only if, the mode and effect of such application have been rendered obvious by the example given. (Italics ours; small caps italicized in original.)

"In my former decision herein I followed the ruling in Ex parte Fulda (1913 C. D. 206, 194 O. G. 549) to the extent of holding that an applicant for a design patent may not be limited to any one specific article if his design is obviously applicable to other articles; but in so far as the Fulda case held that the applicant need not specify any particular article to which the design had been applied that decision was overruled. In the reading of the design statute we must guard against reading the words 'design for' therein as if they meant the same as 'design of,' since frequently in the older laws we find the expressions 'design to be applied' or 'design to be placed on' an article. In Ex parte Andrews, decided of even date herewith [1917 C. D. 13, 234 O. G. 373] I have explained also why the word an in the expression 'design for an article' cannot necessarily mean a singular and particular article, but must in many cases refer to a generic article—as, for example, a design for a dish would cover not only the particular dish shown, but all dishes to which the design is obviously applicable with the same effect as in the specific case shown, and by obviously applicable is meant that it is clear without further explanation or illustration just how the article will look with the design applied to it.

"The Examiner is right in his ruling that it is not obvious how the design presented is the design for a bedquilt or handkerchief. It does not present to the reader's mind the appearance of the bedquilt or the handkerchief. Applicant's object of showing that the design is not confined to articles in three dimensions would be attained by specifying that it is applicable to a child's dinner-card, as heretofore suggested. I do not regard it as appropriate to suggest the form of the specification any further than above stated

and to further recommend the Examiner to permit a statement that the design is applicable to other articles, naming different articles the applicant can name to which the design is obviously applicable in the sense above stated." (Italics quoted.)

In Ex parte Andrews, 1917 C. D. 13, 234 O. G. 373, the subject-matter of the design patent applied for was a design adapted for a series of cut-glass articles differing very radically in their specific forms, but it was "nevertheless a design which preserved intact all its characteristics, wherever applied." The applicant had claimed the following: "The ornamental design for a glass article substantially as shown and described."

Assistant Commissioner Clay, in a very well-written opinion, said in part:

"In view of these facts it clearly would be absurd and a perversion of the law to limit the patent to the one particular dish or vessel or other article to which the design is shown applied. To say, for example, that one who had invented a design for a tea set could not obtain a patent on the design for a tea set, but must be limited to a design for that particular one of the dishes shown, would be entirely out of harmony with the spirit and terms of the law. Though the patent show the design as applied to a saucer, yet if it be a design the mode and effect of which when applied to a cup or sugarbowl is obvious without further showing or explanation manifestly it would not be reasonable to require the applicant to take a series of patents to cover what is, in fact, one single invention—namely, a design for dishes broadly, not narrowly for a particular dish. The principal value of many of the most beautiful designs resides exactly in the adaptability of the design to several forms of articles.

"In the expression of the law 'design for an article of manufacture' it is not only necessary to note that the word 'for' is used and not 'of,' but also to notice that the word 'an' does not refer necessarily to a distinct and specific article, but may refer to a class of articles. In some cases, as in Graff, Washbourne & Dunn v. Webster ([C. C. A.] 195 F. 522) it has apparently not been even considered that the term 'an article' means a complete article, since a section of a border of a dish was held patentable, notwithstanding the entire dish with that border was also patentable. * * *

"* * * I am clear that if any drawing can be so made as to indicate on its face that the invention is not dependent on the specific form of the vessel this ought to be

allowed. In the present instance the drawing is proper and sufficient. The specification also is without objection. The claim should be:

"The ornamental design for a glass article substantially as shown and described."

In Ex parte Northwood, 1917 C. D. 30, 236 O. G. 889, the sufficiency of a drawing was under consideration. The drawing was in part dotted lines, and did not disclose a full figure of anything. Assistant Commissioner Clay held:

"There is no reason now apparent in this case why the applicant might not be permitted to state in his specification that he does not claim the bowl as part of his design and contemplates placing the pedestal on other articles.

*"The Examiner is sustained in his action requiring that there be shown in full lines some complete article, including a base for the pedestal ; but he should allow some change in the specification of the import above suggested."* (Italics quoted.)

If the act of 1902 in its expression "new, original and ornamental design for an article of manufacture" was meant to be as broad as section 4929, Revised Statutes, before its amendment, supra, and cover the same subject-matter, it is obvious that an inventor may invent, we will say for the purposes of this case, at least three kinds of designs for articles of manufacture. First, a design for an ornament, impression, print, or picture to be *applied to* an article of manufacture; second, the design for a shape or configuration for an article of manufacture; third, a combination of the first two, that is, a design which consists of the shape or configuration of an article plus additional ornamentation. (See Robinson on Patents, par. 206.)

Inventions belonging to the first class are illustrated by the design for glassware in Ex parte Andrews, supra, which was a design applicable to vessels of different sizes and shapes. Agreeable to the applicable reasoning in the cases cited from which we have quoted, it is clear to us that in the first class of designs the applicant should be permitted to make his claim sufficiently broad to entitle him to the exclusive use of the ornament upon more than one article, if the ornament when applied answers the requirements of the law. We can readily understand how a certain ornamental design, to be applied to certain articles of manufacture, might not answer the requirements of the law if it was proposed to apply it to some article wholly different in size, shape, and character. An ornamental design might appropriately apply to cut glassware and fail to satisfy the law if it was to be applied to a piano. The chief utility of a design often rests in its adaptability to use on certain sets of articles like sets of dishes or certain pieces of table silverware, etc.

We think that Assistant Commissioner Clay was right in saying that the design must be shown not to be the mere invention of a picture, irrespective of its manner of use, but that the applicant should be required to show by an appropriate drawing the manner of its application. We can find no fault with the action of the Assistant Commissioner in the Andrews Case, under the facts of that case, in allowing the applicant to say the design was for "an article of glassware substantially as shown and described" and in requiring the applicant to disclose by an appropriate drawing the manner in which his design was applied.

As is so clearly set out in some of the decisions quoted, it is the application of the design to an article of manufacture that Congress wishes to promote, and an applicant has not reduced his invention to practice and has been of little help to the art if he does not teach the manner of applying his design. Furthermore, we know of no statutory or other reason why he may not be permitted to submit drawings of more than one article if his design applies to more than one article and if it seems necessary and essential to use more than one drawing in order that he may teach the manner of applying the same to different articles. In submitting more than one drawing, he cannot so modify his design as to present more than one design. The mere fact, however, that he shows his design for glassware by a drawing of the same upon a saucer only, does not, in our judgment, limit the scope of his patent and his protection under it to its use on saucers. In an infringement suit, as we understand it, the test would be, Does the one complained of infringe the art taught by the patentee.[2] If he has applied the same or similar design to the same or similar article or articles so as to mislead the public, he has infringed. The enforcement remedy provided in the act of 1887, supra, we think, entitles the patentee to this degree of protection.

The meaning of the language in section 4929, Revised Statutes, should be construed

[2] As illustrating the effect of the ruling of the Patent Office on claims and specifications in design patents, in infringement suits involving the validity of the claims and specifications, see Ashley v. Samuel C. Tatum Co. (C. C. A.) 186 F. 339, 342.

in connection with the meaning of the enforcement provision. If he is entitled to certain protection under the enforcement provision, why is he not entitled by some appropriate words, in the claim and drawing, to disclose all that he is entitled to, in order that others may be warned of the probable scope of applicant's invention? See Grant v. Raymond, 6 Pet. 218, 8 L. Ed. 376. As was said in Ashley v. Tatum Co., supra, "the absence of such a description in the case at bar has a necessary bearing upon the construction of the patent, and consequently upon the question of infringement."

As applied to the second enumerated kind of design inventions, which is the shape or configuration of the article, the applicant, of course, in his claims and specification, is subject to a narrower limitation. In our judgment, he would not be entitled to claim the configuration and shape applicable to the handle of a pocketknife and disclose that he proposed to apply it to a chair or table. But, if he discloses that he has invented a design for a pocketknife handle or similar article, and discloses by his drawing the manner of application to a knife handle or other similar article, he has reduced his invention to practice and has defined the scope of the same we think sufficiently. He should not be permitted to disclose by his drawing the application of his configuration design to a pocketknife handle and so word his claim as to make the same applicable to *any* article of manufacture. A claim for "a design for a pocketknife handle or similar article substantially as shown and described" would seem to amply cover all he has invented.

As we understand it, the present practice of the Patent Office in applications covering designs of this class is substantially as above indicated. If, however, the views of the Patent Office tribunals are to the effect that the term "design for an article of manufacture" means that a design is only to be applied to one article, and that the applicant must claim only one article, we cannot see under what theory an applicant is permitted to say "and similar articles." Under that construction of the law, the allowance of the words "and similar articles" is not only generous, but is a gratuity, not supported by any authority. The permission by the Patent Office of the use of the words "and similar articles" in certain design claims would seem to be an admission that the statute should be given a broader construction than is indicated in the Guinzburg Case, supra.

The third class, a design which consists of a combination of the configuration of an article and ornamentation upon the same, would seem to include the design proposed by the applicant at bar. It may be that there are some features about the automobile door handle shown which would be of sufficient ornamental effect to be patentable, irrespective of the configuration of the door handle. As to this fact we are not advised, and we feel sure that the Patent Office did not consider the question from this angle. The applicant brought forward an application "for the ornamental design for an interior fitting for an automobile body or similar article substantially as shown," and he shows in his drawing an automobile door handle of a certain configuration and shape which, probably, to some extent, is ornamented by lines, raised portions, and indentations, for the purpose of ornamentation other than that which may be attributed to the general configuration of the door handle.

The argument of appellant in this court would indicate that, if he is allowed his claim on the drawing submitted, he will be entitled to such a construction of the same as will protect him on this design when applied to all the interior fittings of an automobile body or similar articles. If his design belonged to class 1 and could be appropriately applied to interior fittings of an automobile body other than a door handle, and otherwise met the requirements of the law, he should be permitted to so word his claim as to bring this fact out, but we are not prepared to say that appellant's design, being in part the configuration of a door handle, can be applied to any other interior fitting. It may be that it can. We feel sure that the combined design of configuration and ornamentation of appellant's disclosure would not apply to a great many articles embraced in the term "interior fittings of an automobile body." Appellant has presented here seven design patents to W. C. Devereaux, February 19, 1929, covering a rear light frame, a dome light frame, two door handles, two escutcheons, and a door window regulator handle, and from his argument we conclude that he desires that his claim and specification be given such a construction as to permit them to cover all that Devereaux has covered in seven patents. From our understanding of appellant's combination design, it is difficult to see how appellant can justify a contention that he has disclosed the design for an escutcheon or a window regulator handle. Furthermore, while this question is not directly involved in the decision of this case, it was suggested in argument that it was probable that it should be held in a proper case that six of the design patents of Devereaux, supra, should not have

been allowed because they were anticipated by the first one and resulted in double patenting. The holding in Graff, Washbourne & Dunn v. Webster et al. (C. C.) 189 F. 902, would seem to support this view.

The construction and scope given herein to appellant's claim and disclosure would seem to entitle him to nothing more than he would have been entitled to if he had adopted as a title the suggestion of the board, "automobile door handle or similar article." As above indicated, we do not think appellant's claim, when considered with his drawing and specification, should be given the construction he contends for, or the construction placed upon it by the Patent Office.

Since we differ with the Board of Appeals in its construction of the applicable law and its reasons for rejection of appellant's claim, and differ with the applicant as to the scope of the same, we have felt constrained to set out our views at length.

Giving the claim suggested by the Board of Appeals and the claim presented in appellant's application the construction herein indicated, the decision of the Board of Appeals is affirmed.

Affirmed.

LENROOT, Associate Judge, specially concurs.