# United States Court of Appeals for the Federal Circuit

---

**IN RE: RON MAATITA,**
*Appellant*

---

2017-2037

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 29/404,677.

---

Decided: August 20, 2018

---

STEVEN E. SHAPIRO, Kim Shapiro Park and Lee, Los Angeles, CA, argued for appellant. Also represented by JOSEPH GERALD SWAN, Joseph G. Swan, a Professional Corporation, Manhattan Beach, CA.

WILLIAM LAMARCA, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Andrei Iancu. Also represented by THOMAS W. KRAUSE, AMY J. NELSON.

---

Before DYK, REYNA, and STOLL, *Circuit Judges.*

DYK, *Circuit Judge.*

This is an appeal from a rejection in initial examination of appellant Ron Maatita's design patent application covering the design of an athletic shoe bottom. The exam-

iner rejected the application's single claim as non-enabled and indefinite under 35 U.S.C. § 112 because it used a single, two-dimensional plan-view drawing to disclose a shoe bottom design and thereby left the design open to multiple interpretations regarding the depth and contour of the claimed elements. The Patent Trial and Appeal Board ("Board") affirmed the examiner's rejection. Because we find the Board misapplied § 112 in the design patent context, we reverse.

BACKGROUND

On October 24, 2011, Appellant Ron Maatita ("Maatita") filed design patent application, No. 29/404,677 covering the design of an athletic shoe bottom. The application contained a single claim reciting "[t]he ornamental design for a Shoe Bottom as shown and described" and two figures showing a plan view of the claimed shoe bottom design. J.A. 28. Figure 1 is reproduced below:

FIG. 1



J.A. 29. As is customary, the solid lines of Figure 1 show the claimed design, whereas the broken lines show structure that is not part of the claimed design—in this case, the shoe bottom environment in which the design is embodied. *In re Blum*, 374 F.2d 904, 907 (C.C.P.A. 1967); MPEP 1503.02 (III). Figure 2, which the '677 application

described as a "second representative embodiment," differs from Figure 1 only in unclaimed design elements near the arch of the foot. J.A. 28.

On February 4, 2014, the examiner issued a first office action objecting to the application on the ground that the two embodiments were identical and only the unclaimed surrounding environment of the two figures was different. The examiner also rejected Maatita's design claim as failing to satisfy the enablement and definiteness requirements of 35 U.S.C. § 112, first and second paragraphs.[1] In the examiner's view, the application's use of a single, two-dimensional plan view to disclose a three-dimensional shoe bottom design left the design open to multiple interpretations regarding the depth and contour of the claimed elements, therefore rendering the claim not enabled and indefinite.

On May 1, 2014, Maatita responded to the office action, amending the specification to clarify that Figure 1 and Figure 2 represented the same embodiment in different environmental settings. Maatita also argued that there was no enablement problem because "there is no specific allegation that one of ordinary skill would not be able to produce the claimed design, i.e., that such a person would be incapable of selecting an appropriate depth or contour that would result in the illustrated combination of design features." J.A. 55. Moreover, in Maatita's view,

---

[1] The America Invents Act ("AIA") reformatted the paragraphs of § 112 as subsections and made other changes not relevant to this appeal. *See* Pub. L. No. 112-29, 125 Stat. 284, 296 (2011). The citations to § 112 herein refer to the statute as it existed prior to the AIA. The AIA did not make any substantive change to § 112; therefore, the analysis is identical under both versions.

"[o]mission of certain design elements that potentially could have been included merely affects the breadth of the claimed design." *Id*. Thus, the single claim could cover multiple appropriate depth and contour choices without rendering the claim indefinite. Maatita also brought to the Examiner's attention *Ex Parte Kaufman*, Appeal 2012-003545, Serial No. 29/247,378 (P.T.A.B. Mar. 14, 2014),[2] an earlier Board decision reversing enablement and indefinite rejections of a design patent application that, like Maatita's application, disclosed the design for a shoe sole in a two-dimensional, plan-view figure.

On May 13, 2014, the examiner issued a final rejection, again rejecting the claim as not enabled and indefinite. The examiner prepared and included four three-dimensional renderings showing different implementations of Maatita's two-dimensional plan view. These different implementations are shown below, as reproduced in the final written decision:

---

[2]     The *Kaufman* decision can be obtained by inputting its application serial number to the publicly accessible database maintained by the PTO at https://portal.uspto.gov/pair/PublicPair.

As the Board's standard operating procedures (SOPs) explain, a routine opinion is not binding authority on any other Board panel. *See* SOP 2, rev. 9, 4. https://www.uspto.gov/sites/default/files/documents/sop2-revision-9-dated-9-22-2014.pdf.



In this attempt to apply Appellant's design, the designer has guessed that the three elements at the edge of the sole are raised and the five oval elements are recessed with flat centers.



In this attempt to apply Appellant's design, the three elements at the edge of the sole are recessed and the five oval elements are raised with concave centers.



In this attempt to apply Appellant's design, alternating elements are raised and recessed with the centers of the five oval elements having convex appearances.



A less imaginative interpretation of the claim would have a designer applying Appellant's design as an image on a flat surface in a single plane with the rest of the bottom surface.

J.A. 4; *accord* J.A. 71.

In the examiner's view, these four renderings were patentably distinct and therefore could not be covered by a single claim. Thus, Maatita's single claim was indefinite and not enabled, "as one would not know which of the many possible distinct embodiments of the claim is applicant's in order to make and use applicant's design." J.A. 72. Specifically, the examiner noted that the claim was not enabled "because the disclosed design is not understandable to a designer of ordinary skill in the art without resorting to conjecture." J.A. 64. Similarly, the examiner found the claim indefinite "because the scope of protection sought is not disclosed in the specification or understandable as depicted in the drawings." *Id.*

On August 11, 2014, Maatita appealed the final rejection to the Board. On March 29, 2017, the Board issued a final written decision affirming the examiner's rejection. The Board concluded that "because the single view does not adequately reveal the relative depths and three dimensionality between the surfaces provided, the Specification does not reveal enough detail to enable the claimed shoe bottom, under 35 U.S.C. § 112, first paragraph," and that "[t]he same lack of clarity and detail also makes the scope of the claim indefinite under 35 U.S.C. § 112, second paragraph." J.A. 6–7.

Maatita timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

As with utility patents, the written description of a design patent must meet certain statutory requirements regarding enablement and definiteness. *See* 35 U.S.C. § 171. The pre-AIA version of 35 U.S.C. § 112, first paragraph, concerns the requirement that a patent be enabled by its written description. It states, in relevant part:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same.

35 U.S.C. § 112. The second paragraph of § 112 addresses the definiteness requirement. It provides that:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

*Id.* Because design patent claims are limited to what is shown in the application drawings, *see In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988), there is often little difference in the design patent context between the concepts of definiteness (whether the scope of the claim is clear with reasonable certainty) and enablement (whether the specification sufficiently describes the design to enable an average designer to make the design), *see Ex Parte Asano*, 201 U.S.P.Q. 315, 317 (B.P.A.I. 1978) (explaining that issues related to enablement were "generally the same as" issues concerning definiteness in the design patent context); MPEP 1504.04 (I)(A). In this case, in particular, we think that the indefiniteness and enablement inquiries are similar and can be assessed together.

A visual disclosure may be inadequate—and its associated claim indefinite—if it includes multiple, internally inconsistent drawings. *See Times Three Clothier, LLC v. Spanx, Inc.*, Case Nos. 13-cv-2157, 13-cv-7260, 2014 WL 1688130, at *7–9 (S.D.N.Y. 2014) (holding design patents directed to ornamental designs for an undergarment invalid for indefiniteness because the drawings were

inconsistent as to material aspects of the claimed design). Errors and inconsistencies between drawings do not merit a § 112 rejection, however, if they "do not preclude the overall understanding of the drawing as a whole." *Asano*, 201 U.S.P.Q. at 317; *see also Antonious v. Spalding & Evenflo Cos.*, 217 F.3d 849, 1999 WL 777450, at *8 (Fed. Cir. 1999) (unpublished) (reversing summary judgment of indefiniteness when alleged inconsistencies between drawings could have been based on perspective and were not "sufficient to preclude a person from gaining an overall understanding of the total substance of the designs"); *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, Case No. 2:15-cv-02812, 2016 WL 7017219, at *3–5 (C.D. Cal. Dec. 1, 2016) (holding that two patents covering a boot design met § 112's definiteness requirement, despite the fact that some figures showed a small "v-shaped notch" on the inward-facing side of the boot and other figures arguably did not).

It is also possible for a disclosure to be inadequate when there are inconsistencies between the visual disclosure and the claim language. *See Eclectic Prods., Inc. v. Painters Prod., Inc.*, No. 6:13–CV–02181, 2015 WL 930045, at *3 (D. Or. Mar. 2, 2015) (holding a design patent claim invalid for indefiniteness when the verbal description of the claimed design stated it was addressed to an applicator cap on a tube dispenser used for spackling paste but the drawings did not show any cap, just the tube dispenser). Ultimately, a patent is indefinite for § 112 purposes whenever its claim, read in light of the visual disclosure (whether it be a single drawing or multiple drawings), "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

Here, we are not dealing with inconsistencies in the drawings, or inconsistencies between the drawings and

the verbal description, but rather with a single representation of a design that is alleged to be of uncertain scope. The question is whether the disclosure sufficiently describes the design. In *Nautilus*, which dealt with indefiniteness in the utility patent context, the Supreme Court emphasized that § 112 ¶ 2 "require[s] that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." 134 S. Ct at 2129. The Court further explained that § 112's definiteness requirement guards against "zone[s] of uncertainty" within the patent system, "which enterprise and experimentation may enter only at the risk of infringement claims." *Id.* (quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942)). The purpose of § 112's definiteness requirement, then, is to ensure that the disclosure is clear enough to give potential competitors (who are skilled in the art) notice of what design is claimed—and therefore what would infringe. *See Carnegie Steel Co. v. Cambria Iron Co.*, 185 U.S. 403, 437 (1902) (stating that "any description which is sufficient to . . . serve as a warning to others of what the patent claims as a monopoly, is sufficiently definite to sustain the patent").

With this purpose in mind, it is clear that the standard for indefiniteness is connected to the standard for infringement. In the design patent context, one skilled in the art would look to the perspective of the ordinary observer since that is the perspective from which infringement is judged. A design patent is infringed if "an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008) (en banc); *see also Gorham Mfg. Co. v. White*, 14 Wall. 511, 81 U.S. 511, 528 (1871) (holding that design patent infringement

is viewed from "the eye of an ordinary observer, giving such attention as a purchaser usually gives"). Given that the purpose of indefiniteness is to give notice of what would infringe, we believe that in the design patent context, one skilled in the art would assess indefiniteness from the perspective of an ordinary observer. Thus, a design patent is indefinite under § 112 if one skilled in the art, viewing the design as would an ordinary observer, would not understand the scope of the design with reasonable certainty based on the claim and visual disclosure.

Similar logic motivated our decision in *International Seaway Trading Corp. v. Walgreens Corp.*, which held that the ordinary observer test is the sole test for design patent anticipation. 589 F.3d 1233, 1237–41 (Fed. Cir. 2009). In so deciding, we cited Supreme Court and Federal Circuit precedent holding that the same tests must be applied to infringement and anticipation. *See Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate, if earlier."); *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1378 (Fed. Cir. 2004), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d at 671, 678 ; *Door–Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed. Cir. 2001).

So long as the scope of the invention is clear with reasonable certainty to an ordinary observer, a design patent can disclose multiple embodiments within its single claim and can use multiple drawings to do so. *See In re Rubinfeld*, 270 F.2d 391, 396 (C.C.P.A. 1959); *see also In re Klein,* 987 F.2d 1569, 1570 n.1 (Fed. Cir. 1993) ("[T]he drawings depict three slight variations on a single basic design . . . . No objection has been made to this not uncommon practice."). This principle is illustrated by *Rubinfeld*, in which the disclosure included a first embodiment (figures 1–4) showing a design of a floor waxer from

different angles, and a second embodiment (figures 5–8) showing essentially the same floor waxer design, but with the addition of side braces. 270 F.2d at 392, 394. It was clear what the patent intended to cover since, as the court noted, the braces in figures 5–8 could have simply been shown with dotted lines as immaterial parts. *Id.* The court therefore determined that the entire disclosure was directed to the same "inventive concept" and could be included within a single claim. *Id.* at 396.

On appeal, the government argues that we should assess the indefiniteness of Maatita's disclosure by employing the same analysis used for obviousness-type double patenting situations, in which multiple drawings are submitted with a single application to illustrate multiple embodiments and the examiner must compare the overall visual impression of the submitted drawings to see whether they are distinct. *See* MPEP 1504.05 (citing *In re Rubinfield*, 270 F.2d 391 (CCPA 1959)). In the double patenting context, differences between embodiments are considered insufficient to patentably distinguish them if the differences are de minimis or would be obvious to a designer of ordinary skill in the art. *Id.* Such an analysis is inappropriate here. Maatita did not provide multiple, potentially conflicting drawings. Rather, he provided one drawing, and the Board ruled that it is indefinite and non-enabled under § 112.

Even under the correct test, which looks to how the ordinary observer would interpret the drawing actually included in the application, the government argues that Maatita's claim is indefinite because the design, as disclosed in the single, two-dimensional plan or planar view, could be applied to a three-dimensional shoe bottom in a number of ways. Specifically, the shapes specified by Maatita's design could be flat, concave, convex, or some combination thereof. In Maatita's view, the "relative depths and three dimensionality between the surfaces,"

J.A. 6, are not part of the claimed design at all, and the differences between the possible three-dimensional implementations of his design are simply differences in unclaimed subject matter, *see* MPEP § 1504.04 ("[W]hen visible portions of the article embodying the design are not shown, it is because they form no part of the claim to be protected".)

In situations like this, where the sufficiency of a disclosure for purposes of § 112 depends on whether a drawing adequately discloses the design of an article, we believe that the level of detail required should be a function of whether the claimed design for the article is capable of being defined by a two-dimensional, plan- or planar-view illustration. The design for an entire shoe or teapot, for instance, is inherently three-dimensional and could not be adequately disclosed with a single, plan- or planar-view drawing. Whether an article infringed would depend on the perspective chosen to view the article, and a two-dimensional drawing provides no fixed perspective for viewing an article. The article would be infringing from one perspective but not from another. The design of a rug or placemat, on the other hand, is capable of being viewed and understood in two-dimensions through a plan- or planar-view illustration, which clearly defines the proper perspective. *See Ex Parte Salsbury*, 38 U.S.P.Q. 149, 1938 WL 28182, at *2 (Com'r Pat. & Trademarks May 5, 1938) ("It is recognized that flat articles can generally be sufficiently illustrated by a single view."). Such a claim, with a single drawing, would cover all similarly designed rugs or mats, even if one might have a low pile and the other a high pile (for a rug) or might be woven or textured fabric (for a placemat).

The government emphasizes that a shoe bottom is a three-dimensional article rather than a two-dimensional "ornament, impression, print, or picture to be applied to an article of manufacture," *In re Schnell.*, 46 F.2d 203,

209 (C.C.P.A. 1931), and argues that the surface depths of a shoe bottom impact the visual impression of the design. The government is correct that a shoe sole is typically three-dimensional, with treads that may be convex or concave. And, indeed, many shoe bottom designers choose to claim their designs in a three dimensional fashion. But the fact that shoe bottoms can have three-dimensional aspects does not change the fact that their ornamental design is capable of being disclosed and judged from a two-dimensional, plan- or planar-view perspective—and that Maatita's two-dimensional drawing clearly demonstrates the perspective from which the shoe bottom should be viewed. A potential infringer is not left in doubt as to how to determine infringement. In this case, Maatita's decision not to disclose all possible depth choices would not preclude an ordinary observer from understanding the claimed design, since the design is capable of being understood from the two-dimensional, plan- or planar-view perspective shown in the drawing. *See Asano*, 201 U.S.P.Q. at 317.

We do not, of course, suggest that an applicant for a design of a shoe bottom could not choose to disclose his design from a three-dimensional perspective, as many do. If so, that would be the scope of the claimed design for purposes of judging obviousness, indefiniteness, or infringement. That is not what Maatita has done here.

## CONCLUSION

Because a designer of ordinary skill in the art, judging Maatita's design as would an ordinary observer, could make comparisons for infringement purposes based on the provided, two-dimensional depiction, Maatita's claim meets the enablement and definiteness requirements of § 112. We therefore reverse the decision of the Board.

**REVERSED**