## REED ROLLER BIT CO., et al. v. BREWSTER CO., Inc., et al.
### No. 498.

District Court, W. D. Louisiana, Shreveport Division.

Nov. 19, 1932.

Vinson, Elkins, Sweeton & Weems and J. Vincent Martin, all of Houston, Tex., and Leo & Gilmer, of Shreveport, La., for plaintiffs.

Jesse R. Stone, Lester B. Clark, and Andrews, Streetman, Logue & Mobley, all of Houston, Tex., and Pugh, Grimmet & Boatner and Chas. B. Emery, and J. N. Marcantel, all of Shreveport, La., for defendants.

DAWKINS, District Judge.

This is a suit for the alleged infringement of letters patent, Nos. 1,235,883 and 1,295,134, issued to Redus D. Dodds, August 17, 1917, and February 25, 1919, respectively, as well as No. 1,847,424, issued to Geo. J. Barrett and Sosthene Robichaux, March 1, 1932, of which plaintiffs are the owners or assignees. They cover devices for taking cores in the drilling of oil and gas wells to determine the presence of such minerals.

Defendants attack the validity of the said patents and deny infringement.

The device consists of a barrel materially smaller than the drill stem, having a cutting edge on the lower end, a valve in the top, and a core catcher in the lower end. It is inserted in the drill stem while the latter is still in drilling position in the well, rigidly affixed thereto, the core is taken and the device withdrawn without disturbing the position of the drill, thereby saving the time and expense incident to other methods in which the drill stem has to be withdrawn and replaced.

Without going into technical details, plaintiffs rely upon the following features of the three patents, expressed in simple language, to wit:

In the first Dodds patent, (1) a valve at the top of the core to keep the water and slush pumped from the surface out of the core barrel, and (2) the extending of this barrel a few inches below the cutting edge of the fish-tail bit so that the surrounding formation may prevent water from entering the core barrel, the purpose being to keep the core thus taken intact, and not to have it washed out or contaminated by the water and slush;

in the second Dodds patent, (1) the providing of a boring tool on the lower end of the core barrel to cut into the formation, and (2) the placing of a trap or core catcher near the bottom end to prevent the core from dropping out as it is raised to the surface; and in the Barrett and Robichaux patent the providing of a yieldable connection (a spring) between the core barrel and the drill stem to prevent injury to the former if hard formation is encountered.

In view of the defendants' contention that the Dodds patents did not show the core barrel was to be removable through the drill stem or by withdrawing the latter from the well, plaintiffs filed in the Patent Office disclaimers to the subject-matter of these patents, except as applied to drills of the class described, "wherein the core barrel is removed through the drill stem."

Plaintiffs rely upon claims 3 and 5 of the first and 1, 2, and 3 of the second Dodds patents, and claims 1, 7, and 8 of the Barrett & Robichaux patents, all of which are quoted as follows:

### Dodds Patent No. 1.

"3. The combination with a drill stem and a bit secured thereto having a central bore, of a tubular member fixed in said stem and extending through said bore below the bit, a boring tool carried by the lower end of said member and a valve within said member permitting the passage of fluid upwardly therethrough."

"5. The combination with a drill stem having a drill bit attached to the lower end thereof provided with a central bore, or a tubular member projecting through said bore and extending below the bit and having its lower end formed into a boring tool, a valve within said member permitting the flow of fluid upwardly therethrough and means for detachably securing said member in position in said stem."

### Dodds Patent No. 2.

"1. The combination with a drill stem, and a bit attached to the lower end thereof, having a central bore, of a tubular barrel passing through said bore, interenging means carried by the stem and barrel, through which the rotation of the former is imparted to the latter, a tool carried by the lower end of the said barrel, and a trap within said tool, permitting the admission of the cuttings of said tool into said barrel, and trapping the same within the barrel."

"2. The combination with a drill stem, and a bit secured thereto, having a central bore, of a supporting member, within the stem, whose lower end extends through said bore below the bit, a boring tool carried by the lower end of the said member, interengaging means carried by the stem and member, respectively, whereby rotation is imparted from the former to the latter, and a trap within said boring tool provided to permit the passage of the cuttings from said tool into said member, and to retain said cuttings so admitted therein."

"3. The combination with a drill stem, having a drill bit attached to the lower end thereof, provided with a central bore, of a tubular supporting member, projected through said bore, and extending below the bit, a boring tool carried by the lower end of said member, interengaging means carried by the drill stem and said member, respectively, through which rotation is imparted from the former to the latter, means for locking the interengaging means of said member into engagement with the corresponding means of said stem, the interengaging means of said member being releasable from the corresponding means of said stem, when said locking means is released."

### Barrett & Robichaux Patent.

"1. The combination with a drill stem and a drilling tool attached to the lower end thereof and having an axial bearing, of core barrel in the stem whose lower end works through said bearing, a core former at the lower end of the barrel, means for holding the core former yieldingly against the formation, a ring in the stem having a depending abutment, releasable means carried by barrel and engageable underneath said ring and against said abutment."

"7. The combination with a drill stem and a drilling tool attached to the lower end thereof and having a vertical opening, of a core barrel in the stem associated with said opening, a core former at the lower end of the barrel, driving means between the stem and barrel whereby the barrel may be driven from the stem, said driving means being formed to permit the barrel to move longitudinally relative to the stem and to maintain such driving relation during such movement and yieldable means normally resisting such movement."

"8. The combination with a drill stem and a drilling tool at the lower end of the stem having an opening, of a core barrel in the stem whose lower end is associated with said opening, a core former at the lower end of the barrel, driving means whereby the barrel may be driven from the stem said driving means

including interconnected relatively movable parts shaped to establish such driving relation and yieldable means incorporated into said driving means whereby the core former is held yieldingly against the formation being pierced."

Defendants contend that the Dodds patents were merely paper patents, never put into use, and must therefore be narrowly construed. They have cited numerous patents as anticipation of all these claims. On the other hand, the principal contention of plaintiffs is that, even if all the elements are old or disclosed in the prior art, which they deny, they have, in the three patents in suit, provided a new combination which accomplishes a novel and useful result never attained before, which amounts to invention. They further assert that there is no lawful proof in the record as to whether the Dodds patents were or were not used prior to their acquisition by plaintiffs, but that since that time large numbers of the device, made in accordance therewith, have been manufactured, sold, and used successfully.

I find that the plaintiffs have utilized the patents since they were acquired, and are entitled to the usual construction in such cases. However, I believe that all of the elements in all three patents are disclosed in the prior art, particularly Frisbee No. 168,010, which shows the valve in the upper end of the core barrel, functioning in the same way and for the same purpose, and in the three Bullock patents, Nos. 473,907, 473,908, and 474,080, showing the removable core barrel which is inserted and made rigid for taking the core, also having a valve at the top, a cutting tool on the bottom, and a flexible ring in the bottom to keep the core from dropping out when removed from the well. The core barrel also extends below the cutting edges of the bit. It is true that the Bullock patents disclose rather clearly that, when the core barrel is withdrawn, it likewise carries with it the upper cutting edge of the drilling tool, preventing operation of the drill stem until replaced, whereas it would seem that drilling might nevertheless proceed without it under the patents in suit, but no claim is made on behalf of the latter with respect to this feature, if it really exists, and hence no advantage can be taken therefor in determining the validity of plaintiffs' patents. In Ameling, No. 997,358, the core barrel is also extended beyond the bit, and the same advantages claimed therefor as are now asserted by plaintiffs for their patents. The spring used in the patents in suit to give resiliency to the core barrel is found in Grainger No. 1,663,757, issued May 27, 1928, performing substantially the same function as that in Barrett and Robichaux, for which the application was filed January 14, 1929.

Neither of the claims, 3 and 5, of the first Dodds patent, which are the only ones relied on by the plaintiffs, describe the specific means for attaching the core barrel to the lower end of the drill stem, except the broad expression of a "means for detachably securing said member" (core barrel) "in position in said stem," which reads as well on Bullock and the other citations to the prior art as does the first Dodds patent. In fact, plaintiffs do not appear to make any contention with regard to this feature in the first Dodds patent, but, as to claim 3, points out that in Bullock the cutting edges below which the end of the core barrel extends are attached to the core barrel, and are not a part of the usual fish-tail drill bit as in Dodds, but in each instance these reamers or cutting edges perform identically the same function, i. e., the cutting away of the outer edges of the bore hole behind the core barrel, and the use by Dodds of the well-known removable drill bit on the lower end of the drill stem in place of the reamers or cutting edges on the core barrel in Bullock does not, in my judgment, amount to invention. Both devices are intended to accomplish substantially the same purpose in the same way, that is, the taking of the core from the center of the hole, unaffected by the water which is pumped in while this operation is carried on. My view is, therefore, that claims 3 and 5 of the first Dodds patent are invalid.

Taking up claims 1, 2, and 3 of the second Dodds patent, I find that in the Bullock patents, particularly No. 3,473,908, in claim No. 4, substantially the same general language is used to describe the means for attaching the core barrel to the drill stem in operation. But for the drawings, in each instance referred to in the specifications, this claim of Bullock would read upon the structure of plaintiffs in the second Dodds patent, and vice versa. Of course, the engaging means are different in mechanical construction, but the function of each is the same, as well as the purpose to be accomplished, and, in my opinion, equivalents mechanically. The drawings assist, but do not control, in construing the claims of a patent (Whiting Mfg. Co. v. Alvin Silver Co. (C. C. A.) 283 F. 75, certiorari denied, 260 U. S. 731, 43 S. Ct. 93, 67 L. Ed. 486), and, if the means adopted in the one instance is the mechanical equivalent of the other, there is no invention. I do not

believe there is any patentable difference between Bullock and Dodds, either in the engaging or detachable means used. Bullock has a cutting tool on the end of the core barrel as well as the core catcher. The flexible ring on the latter as shown by the drawings consists of a number of parallel strips flexibly bound to the sides of the core barrel, near the bottom, and the only difference between this and plaintiffs' structure is that the bottom ends only of these strips are attached to the barrel while the upper ends are left loose and bend over towards the center. In the one instance the center of the strips flex or bend, and in the other the ends permit the core to enter, while both spring back into place to keep it from falling out. The latter method is shown in the British patent to Lapp, No. 5,942. I am of the opinion, therefore, that all of the elements in the claims relied upon as to the second Dodds patent were old and anticipated by the prior art.

As I appreciate it, the only thing added by Barrett and Robichaux was the spring attached to the upper end of the core barrel. As above pointed out, this was present in Grainger.

My conclusion is that the three patents in suit amount to nothing more than the grouping together of old elements in a combination, without patentable novelty, but in a manner which might readily occur to a skilled mechanic. Plaintiffs' demands should therefore be rejected.

Proper decree should be presented.